**L.G. CAULDER, Jr., Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–7349.**

United States Court of Appeals, Eleventh Circuit.

June 17, 1986.

Willie V. Miller, Ann Patterson Leonard, Fort Oglethorpe, Ga., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Mary P. Thornton, Birmingham, Ala., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

L.G. Caulder, Jr. appeals from a district court order affirming the denial of his claim to disability benefits by the Secretary of Health and Human Services (the "Secretary"). We reverse the district court and remand to that court with instructions to remand the case to the Secretary for consideration of the new medical evidence which Caulder proffered to the district court. This court has jurisdiction to review the district court's decision under 28 U.S.C. § 1291.

## I. BACKGROUND OF CLAIM AND ADMINISTRATIVE PROCEEDINGS

L.G. Caulder, Jr. filed a claim on July 1, 1983, for a period of disability and for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, alleging an onset date of April, 1983. Caulder claims that he is disabled due to advanced emphysema and back and leg problems.

Caulder proceeded through the administrative process, culminating in a hearing before an Administrative Law Judge ("ALJ") on March 22, 1984. Caulder and his wife testified that he no longer works, experiences shortness of breath, cannot perform household chores, and can walk only 100 to 200 yards before stopping to rest. Caulder's work history includes experience as a heavy equipment operator, a supervisor in the construction industry, a printing pressman, and a service station manager. He completed the eighth grade of school. According to Caulder, he stepped down from a supervisory position to operator work in 1978–79, taking a 50% pay cut on the advice of his doctor due to emphysema. During 1980, he did not work for three quarters because of illness, but returned to work when his brother gave him a job in which, according to Caulder, "he did not actually have to earn his way." In May 1981, Caulder was hospitalized for chronic obstructive pulmonary disease (COPD). Caulder asserts that he ceased working altogether in April, 1983, due to advanced emphysema and back and leg problems. He filed his claim for a period of disability and disability insurance benefits on July 1, 1983. Caulder was 52 years old at the time of the hearing.

The medical evidence presented at the hearing included reports from physicians concerning both Caulder's breathing problems and his back and leg complaints. Because the decision to remand this case is based in part on the new medical evidence's relevance to and affect on the ALJ's findings, we set forth a summary of the various medical reports that were part of the administrative record.

Dr. Elmore, Caulder's treating physician, provided reports dated July 16 and August 19, 1983, which indicate that he first saw Caulder in January, 1981, and was currently seeing him approximately every three months. Dr. Elmore described Caulder as so short of breath that he could not tolerate any exertion, nor could he stand on his legs for long because of cramping, therefore placing him under a severe disability that precludes his working. Dr. Elmore diagnosed emphysema, relying on the clinical and laboratory findings in reports of specialists to whom he had sent Caulder in 1981 for further testing. Dr. Avery received the referral and apparently arranged for Caulder to be hospitalized for testing and for his examination by Dr. Berglund, a cardiologist. Dr. Berglund's clinical impression of Caulder's breathing problem in his report dated May 5, 1981, was COPD, probably severe, and he suggested minor coronary artery disease. Dr. Hixson interpreted the pulmonary function test given on that date and stated that it indicated moderate non-reversible obstructive ventilatory impairment, and was consistent with advanced emphysema. Dr. Avery interpreted the results of the pulmo-

nary function test as indicative of moderately severe COPD, not significantly reversible by bronchodilator therapy. In July, 1983, Dr. Reddy administered a pulmonary function test to Caulder and found moderate COPD.

Caulder's back and leg problems were diagnosed by Dr. Elmore as progressive and peripheral neuropathy affecting the lower extremities. As noted above, Dr. Elmore opined that the combination of this problem with the breathing problem rendered Caulder unable to work. In September, 1983, Dr. Taylor examined Caulder concerning his increasing difficulty with his legs and found good dorsalis pulsations with good femoral pulsations, but he prescribed medication and noted that he would get a vascular consultation. Dr. Rollins, a neurologist, examined Caulder on October 25, 1983, and disagreed with Dr. Elmore's diagnosis of peripheral neuropathy. His impression was that Caulder has either intermittent claudication of the lower extremities or claudication of the spinal roots in the back. Dr. Rollins recommended that Caulder undergo a lumbar myelogram and arteriogram to ascertain if his diagnosis was correct and whether the conditions would be amenable to surgical treatments as he believed. Caulder first tried medication before submitting to the hospitalization and testing. After the medication proved unsuccessful, Caulder returned to Dr. Rollins for the tests.

The ALJ rendered his opinion on Caulder's claim prior to Caulder's return to Dr. Rollins, however. Caulder's attorney filed the request for review by the Appeals Council as required within the 60 days following the ALJ's opinion. At that time, Caulder had just entered the hospital and the results of the tests were not yet available.

In his decision issued on April 30, 1984, the ALJ found that Caulder had a history of COPD and a back impairment, but that he did not meet the severity standard of the Social Security Act and therefore was not disabled. The ALJ refused to give Dr. Elmore's opinion the considerable weight ordinarily given to a treating physician, *Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir.1984), especially a physician who has treated a patient over a significant length of time, *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. Unit A 1981),[1] because he found that the evidence as a whole did not justify Dr. Elmore's opinion. The ALJ found that Dr. Elmore did not submit clinical or laboratory findings to substantiate his diagnosis, apparently not considering the specialists' reports referenced in Dr. Elmore's reports as adequate. The ALJ also referred to selected portions of the other medical reports. He discounted Dr. Reddy's diagnosis of COPD because he found that it was "apparently based on the claimant's subjective remarks rather than the objective findings which were essentially negligible," and referred to Social Security Ruling 82–55 which would classify such levels standing alone as not severe. The ALJ concluded that the evidence did not substantiate progressively worsening emphysema.

As to Caulder's back and leg problems, the ALJ report is less than clear.[2] Although the report states at one point that "a consultative neurologist stressed that the claimant does have" peripheral neuropathy, the context of the opinion indicates that this is a misstatement and that in fact the ALJ relied on Dr. Rollins' finding that Caulder does not have peripheral neuropathy. As noted above, Rollins had recognized that Caulder was suffering from an ailment, albeit misdiagnosed, and had recommended further testing to correctly identify the problem. The ALJ report also erred in noting that Rollins had doubted that either problem would be amenable to surgical treatment. In fact, Rollins' report indicates that at that time he had thought

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

2. We believe this is primarily due to typographical or proofreading errors not reviewed and corrected by the ALJ when he signed the report.

that either would be amenable to treatment. In conclusion, the ALJ stated that "there is no indication that the claimant sought further evaluation as recommended. Physical examination of the lower extremities has been essentially negative and without medical data to the contrary, the evidence fails to show an incapacitating vascular problem." At the hearing the ALJ questioned Caulder as to whether he had ever undergone a lumbar myelogram or an arteriogram. When Caulder responded negatively, the ALJ did not inquire whether Caulder planned to do so in the future so that the decision should be postponed and the results included in the record. The ALJ discounted Caulder's allegations of pain, as well as his wife's testimony about his pain, finding that they were not supported by the evidence.

Once the ALJ found that Caulder was not suffering from a severe impairment, singly or in combination, he stopped the sequential evaluation. The Appeals Council denied Caulder's request for review of the ALJ decision, making the ALJ determination the final decision of the Secretary subject to review in federal court.

Caulder then commenced this action in federal district court under the jurisdiction of 42 U.S.C. § 405(c). By that time, Caulder had undergone the myelogram and presented the results of that test to the district court. He requested the district court to remand the case to the Secretary for consideration of the new evidence. The district court held that it had no jurisdiction to consider the additional evidence and affirmed the denial of benefits.

## II. QUESTIONS ON APPEAL

A. *Consideration of Evidence Not Presented During the Administrative Proceedings*

Caulder's dispositive claim at this point is his request that the case be remanded to the Secretary for consideration of the new evidence proffered to the district court consisting of the results of the medical examinations which occurred after the Appeals Council denied review. The district court did not apply the proper standard to determine whether remand was warranted in this case. Under the appropriate analysis, a remand of this case to the Secretary is warranted. As we have clearly stated before, "the judicial determination whether remand is necessary is a *de novo* proceeding." *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir.1985). In that same case, this court cited with approval authority from another circuit holding that the underlying question of materiality of new evidence is also a question of law. *Id.* (citing *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984)). The Secretary's attempt to frame the standard of review to be otherwise is in direct conflict with this binding circuit precedent.

### 1. *Appropriate Legal Standard*

The district court stated that it would not consider the additional medical evidence proffered by Caulder because "the evidence is not proper for consideration at this stage of the proceeding. The court's determination is limited to the record presented to the ALJ." The court cited as support the House Conference Report on the Social Security Disability Amendments of 1980. We find that the district court mischaracterized the issue. Caulder's claim, as stated in his brief in support of his motion for judgment on the pleadings and/or remand filed in the district court on March 22, 1985, is not that the district court should have considered the new evidence in the first instance, but rather that the district court should have considered it to determine whether he had established good cause for remanding the case to the Secretary for reconsideration of his case in light of the new evidence.[3]

3. Given Caulder's presentation of the issue, we find it unnecessary to address the correctness of the district court's narrow reading of its authority, but we note that at least one other circuit suggests that there may be situations in which it is appropriate for the district court to consider evidence that was not before the Appeals Council. *See Dorsey v. Heckler*, 702 F.2d 597, 602 n. 7

On appeal the Secretary argues that the legislative history of the Social Security Disability Amendments of 1980, Pub.L. No. 96–265, 94 Stat. 441, indicates that Congress wished to foreclose introduction of new evidence. The Secretary relies on language in the Senate Report to the effect that the intent of the legislation was to end the "floating application" procedure by which new evidence could be introduced at each step of the appeals process. Sen.Rep. No. 408, 96th Cong., 1st Sess. 57, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1335. A reading of the statement in context, however, clarifies that Congress intended to preclude introduction of evidence pertaining to new impairments or worsening conditions. The Senate Report clearly stated that this "would not affect remand authority to remedy an insufficiently documented case or other defect." *Id.*

The Conference Report explains how the 1980 Amendments modified section 307 of the Act concerning the remand of cases back to the Secretary once the claimant has filed a complaint in federal court. H.R. Conf.Rep. No. 944, 96th Cong., 2d Sess. 58, *reprinted in* 1980 U.S.Code Cong. & Ad. News 1392, 1406. The main result of the legislation was the elimination of the Secretary's authority to remand cases on his own motion and the shift of that authority to the court. Under the former statute, the Secretary had absolute authority to remand a case that had been filed in district court anytime prior to his filing an answer in that court. The statute as amended requires that "such remands ... be discretionary with the court upon a showing by the Secretary of good cause." *Id.* at 58–59, 1980 U.S.Code Cong. & Ad.News at 1406. The 1980 legislation also limited the court's authority to remand a case on its own motion or on motion of the claimant. Prior to the amendment, the court was authorized to do so for "good cause." Under the statute as amended the court is authorized to remand a case "only on a showing that there is new evidence which is material, and that there was good cause for failure

(5th Cir.1983). *But see Parks v. Harris*, 614 F.2d

to incorporate it into the record in a prior proceeding." *Id.* at 58–59, 1980 U.S.Code Cong. & Ad.News at 1406. The Conference Report listed examples of what would constitute a showing of good cause by the Secretary. The examples included procedural difficulties such as problems in obtaining the transcript or files of the case. The conferees expressed their hope that such remands would be kept to a minimum so that undue burdens would not be placed on persons appealing their decisions. The Conference Report does not explain or give examples of what would constitute a showing of good cause by a claimant. This court, however, has addressed this issue on several occasions.

■ Although the Secretary's argument in his brief to this court followed the district court's reading of the legislative history, both parties seemed to acknowledge at oral argument that the standard governing remands by the district court to the Secretary on the basis of new evidence is found in *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir.1985). The Secretary cited *Cherry* for the proposition that a reviewing court is limited to the certified administrative record in examining the evidence. More relevant, however, is *Cherry*'s holding that although the federal court does not examine evidence that was not considered during administrative proceedings, it should remand a case to the Secretary to consider such evidence if a claimant makes a sufficient showing. The Secretary argues that remands should not be routinely granted, citing *Birchfield v. Harris*, 506 F.Supp. 251 (E.D.Tenn.1980). While we agree that a remand request should be denied if it is simply a delaying tactic, *Cherry* presents a balanced approach for distinguishing those cases in which remand is appropriate and those in which it is not. We agree with the Fifth Circuit's observation that "not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing."

83, 84 (5th Cir.1980).

*Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). Under the *Cherry* standard, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level. *See also Wright v. Heckler,* 734 F.2d 696 (11th Cir.1984).

### 2. *Caulder's Proffered Evidence Meets the Criteria*

■ Caulder's evidence proffered to the district court consists of records of a hospitalization in July and August, 1984; a letter from Dr. Craddock, a treating physician; and a Physical Capacities Evaluation ("PCE"). The hospital reports contain the results of a lumbar myelogram and CT scan of the spine which revealed a block at the L4–5 level and diagnosis of spinal stenosis. They indicate that an elective lumbar laminectomy with decompression at L3, 4, and 5, and S1 was performed, and that Caulder was readmitted at one point to mend a cerebrospinal fluid leak. The surgeon, Dr. Craddock, found that the procedure did not eliminate Caulder's pain, weakness, or numbness in the legs. The Secretary argues that the additional medical evidence does not meet any of the three above criteria. We find that it meets all three.

First, the Secretary asserts that the additional evidence is cumulative because evidence of the ailment was before the ALJ in the form of Caulder's testimony about his back trouble at the hearing. Although Caulder testified about his back trouble, the nature of the profferred additional medical evidence is such that one could not reasonably say that it is cumulative to lay testimony by a claimant. In *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir.1983), this court explained that:

> [t]he ALJ is guided by four considerations in determining whether a claimant is disabled within the meaning of the Social Security Act: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family; and (4) the claimant's age, education, and work history.

704 F.2d at 1210 (citations omitted). New objective medical evidence would be especially important where the ALJ, as in the instant case, stopped the sequential evaluation when he found no severe impairment. At the hearing, the evidence of Caulder's back and leg impairments was inadequate, consisting simply of one doctor's diagnosis contradicted by another without a proper diagnosis by the latter physician despite his recommendation for further testing. The proffered medical evidence containing the results of the lumbar myelogram and laminectomy is the product of the only comprehensive medical evaluation of a possible cause of Caulder's back and leg complaints and thus is not cumulative.

Second, the Secretary argues that the evidence is not material in that it will not alter the Secretary's determination. To be material, the evidence must be relevant and probative so that there is a reasonable possibility that it would change the administrative outcome. *Wright v. Heckler,* 734 F.2d 696 (11th Cir.1984); *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). This court has held that when determining whether to remand a case to the Secretary for consideration of new evidence, the mere statement by the Secretary that the new evidence would not ultimately change the decision cannot be accorded any weight since the statement concerning the materiality of the evidence not in the certified administrative record is advisory at best. *Cherry v. Heckler,* 760 F.2d 1186, 1194 (11th Cir. 1985). The other aspects of the Secretary's argument that the evidence is not material are unpersuasive.

The evidence is relevant and probative in that it pertains to a condition that Caulder listed in his applications at the administrative level as a source of his disability. The evidence also contains a medical opinion on the presence of the impairment during the

time period for which benefits are sought. The fact that Dr. Craddock's treatment and examination of Caulder took place later in the proceedings does not undermine the weight to be given his diagnosis. *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983). We agree with the Secretary's assertion that a physician's statement that a claimant is disabled is not dispositive of the issue of disability; the statement, however, must be considered in the Secretary's examination of the totality of the evidence.

We reject the Secretary's contention that the proffered evidence of the PCE is not relevant. He contends that because the ALJ determined that Caulder did not have a severe impairment, the sequential evaluation stopped and thus the issue of his residual function capacity was not reached. This begs the question, as the other new evidence may establish that Caulder does have a severe impairment. Consequently, he either would be found to be disabled because he meets one of the listed impairments, or the sequential evaluation would continue, moving next to the determination of residual function capacity and the results of the PCE would be relevant.

We find that there is a reasonable possibility that the new evidence would change the administrative outcome because it consists of medical evidence that relates directly to one of Caulder's principal alleged impairments, about which there was inadequate evidence presented to the ALJ. The ALJ noted that Caulder's assertion of possible intermittent claudication of the lower extremities or claudication of the spinal roots was unsubstantiated and that Dr. Rollins recommended further examination; yet the ALJ failed to order further evaluation. The ALJ is charged with the responsibility of ensuring that the record is fully and fairly developed. *Todd v. Heckler*, 736 F.2d 641 (11th Cir.1984); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Although the claimant has the burden of proving that he is under a disability,

the ALJ must inquire fully into the matters at issue. *Ford v. Secretary of Health & Human Services*, 659 F.2d 66, 69 (5th Cir. Unit B 1981).[4] An "administrative decision is not supported by substantial evidence if the administrative law judge does not have before him sufficient facts on which to make an informed decision." *Id.* Consultative examinations are not required by statute, but 20 C.F.R. § 404.1517 provides for them where warranted. Although the issue of the ALJ's failure to order further examination in light of Dr. Rollins' report at the time of the hearing is not before us, we find that the proffered evidence diagnosing a possible source of the ailment in Caulder's lower extremities fills a gap as to material facts that resulted from the ALJ's inadequate development of the record. Without this evidence, a proper view of the case is skewed, making it impossible to conclude that a decision is supported by substantial evidence. *See Dorsey v. Heckler*, 702 F.2d 597, 605 (5th Cir.1983) (quoting *Essig v. Secretary of Health & Human Services*, 531 F.Supp. 55, 57 (E.D.N.Y. 1981)). The evidence could substantiate Caulder's assertion that he has a severe impairment, or that his combination of impairments presents more than "a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984); 20 C.F.R. § 404.1520(b)–(c).

Third, the Secretary concludes, without support, that Caulder has failed to show good cause as to why the evidence was not presented to the Secretary. We disagree and find that Caulder did establish good cause for the failure to submit the evidence at the administrative level because the evidence did not exist at that time. Nonexistence of the evidence at the time of the administrative proceedings may constitute good cause. *Cherry v. Heckler*, 760 F.2d

---

**4.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

at 1192; *Johnson v. Harris,* 612 F.2d 993, 998 (5th Cir.1980).

We also are guided by the Fifth Circuit's decision in a factually similar case in which the claimant was hospitalized during the time period in which the ALJ decision was issued and review by the Appeals Council was sought. *Dorsey v. Heckler,* 702 F.2d 597, 606 (5th Cir.1983). After filing suit in federal court, Dorsey requested a remand in light of the new medical reports concerning her hospitalization. The court granted the request for remand noting that the brief period of time between Dorsey's release from the hospital and the issuance of the Appeals Council's decision limited her opportunity to present the evidence to the Appeals Council and fulfilled the good cause requirement. We agree with this approach, finding it reasonable and consistent with the line of authority in this circuit.[5]

Caulder's case is not one in which the claimant procrastinated in obtaining copies of evidence readily available. Neither is there any indication in the record that the ALJ ordered Caulder to submit to additional tests. On the facts of this case, we find that Caulder's decision to continue a course of prescribed medication for a short period before submitting to the surgical procedures was reasonable when faced with conflicting medical diagnoses. Caulder was admitted to the hospital on July 9, 1984, and on July 11th, the surgical procedure was performed. On that same date, his memorandum in support of his request for review by the Appeals Council was filed. Caulder was not discharged until the 17th. During the following few months, Caulder was hospitalized for another week-long period and then visited Dr. Craddock several times over a period of several weeks. In the meantime, the Appeals Council had de-

nied his request for review and a civil action had been commenced within the 60 day period following that denial to avoid foreclosure of future proceedings. We conclude that Caulder was limited in his opportunity to present the new evidence to the Appeals Council to an extent that satisfies the good cause requirement. Caulder has met the *Cherry* criteria and is entitled to a remand of his case to the Secretary.

**B. *Assessing Subjective Complaints of Disabling Pain***

Caulder's other main contention on appeal is that the ALJ applied an erroneous legal standard in evaluating his subjective complaints of pain. Caulder alleges that he suffers from chest pain as well as from low back pain and leg cramps. Both Caulder and his wife testified as to the extent of the pain. The ALJ stated that he did not find Caulder's testimony credible because "his description of an invalid-type existence ... was not convincingly supported by the objective medical findings and other evidence in the record." Caulder asserts that it is improper to require objective clinical evidence to prove disabling pain.

This court recently has restated the standard of review for subjective allegations of pain in light of section 3(a)(1) of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794. *See Hand v. Heckler,* 761 F.2d 1545 (11th Cir.), *vacated and rehearing en banc granted on other grounds sub. nom. Parker v. Heckler,* 774 F.2d 428 (11th Cir. 1985). The Secretary as well as the district court are, of course, bound to apply the standard articulated in the new legislation. On remand, the Secretary must apply the new standard to this case in light of the new evidence and determine "whether objective medical impairments could reason-

---

**5.** The preferable approach, of course, would be for the ALJ to ensure that all relevant and material evidence is obtained before rendering his or her opinion. Further inquiry by the ALJ into the recommendations of the physicians and the claimants' intended course of treatment would assist to this end. The ALJ can discourage claimants from delaying the process of de-

veloping evidence by placing them on notice that they will not gain any advantage in such action since the district court generally does not consider the impact of new evidence on the merits, but remands the case to the authority who would have evaluated it if it had been produced earlier.

ably be expected to produce the pain complained of." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986); *see also Davis v. Heckler*, 759 F.2d 432, 437 (5th Cir.1985). As to Caulder's assertion that the ALJ did not assess the complaint of chest pains at all, we note that disregard of such complaints without articulating the reason is inappropriate because it deprives a reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984).

### C. *Substantiality of Evidence*

Caulder's third argument on appeal is that the Secretary's determination was not supported by substantial evidence. He challenges several aspects of the ALJ's view of the evidence. He argues that the ALJ's failure to give Dr. Elmore's opinion the weight generally accorded the opinion of a treating physician was error. He asserts that the ALJ's reliance on the one pulmonary function test administered by a consulting physician, and the ALJ's discounting even that administering physician's diagnosis and instead comparing the raw test results to a Social Security Ruling were inappropriate on the facts of this case. He contends that the ALJ's finding that his back and leg impairment was nonsevere simply because the physicians had presented conflicting diagnoses also was improper.

■ Because we are remanding this case to the ALJ for reconsideration of the case in light of the new evidence, our determination of the overall question of whether substantial evidence in the earlier record supported the ALJ's finding is not necessary. As to the remaining claims of error, we find that Dr. Elmore's reports are based on clinical and laboratory findings to the extent that they refer to the reports which he received from the specialists that examined Caulder upon his referral. Assessment of the results of the pulmonary function test must be made in light of the review of the entirety of the evidence, including results of other tests. In Caulder's case, the ALJ's opinion should reflect the specifics of his consideration of the totality of the evidence because the "need to consider all the available evidence in the record is particularly strong when a claimant has two or more impairments." *Dorsey v. Heckler*, 702 F.2d 597, 605 (5th Cir. 1983). The ALJ must articulate his reasons for not giving weight to the diagnoses accompanying the test results. We find his observation that the "opinion appears apparently based on the claimant's subjective remarks" conjectural and contradictory to the physician's report. His blanket statement that the evidence as a whole does not justify the treating physician's opinion also is inadequate especially here where the claimant has been to more than one treating physician. Reconsideration of the conflicting diagnoses will necessarily occur on remand. The degree of impairment caused by the combination of Caulder's ailments also must be assessed. 42 U.S.C. § 423(d)(2)(C); *see also Bowen v. Heckler*, 748 F.2d 629, 634–35 n. 1 (11th Cir.1984).

### CONCLUSION

The court below erred in not remanding this case to the Secretary for consideration of the new evidence proffered by the claimant. We hereby REMAND the case to the district court with instructions to remand it to the Secretary for further proceedings not inconsistent with the purpose expressed above.