**Daniel WHITE, Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. CIV.A.04–G–2632–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

June 15, 2005.

Douglas A. Wright, Douglas A. Wright PC, Florence, AL, for Plaintiff.

Alice H. Martin, Lane H. Woodke, US Attorney's Office, Birmingham, AL, Reginald V. Speegle, Roy F. Satterwhite, III, Social Security Administration, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Daniel White, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Disability Insurance Benefits (DIB), a Period of Disability (POD) and Supplemental Security Income Benefits (SSI). Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

■ The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

■ In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impair-

ment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Russell W. Lewis, determined the plaintiff met the first two tests, but concluded he did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote*, at 1559.

### WHEN ADDITIONAL EVIDENCE IS SUBMITTED TO THE APPEALS COUNCIL

■ Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case. [W]e will consider at each step of the review process any information you present as well as all the information in our records."). The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir.1994). To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Caulder*, at 877.

The first question that must be answered when evidence is presented for the first time to the Appeals Council is whether it satisfies the requirements under the regulations for consideration by that body. The pertinent regulation is 20 C.F.R. § 404.970(b), which provides as follows:

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council *shall* evaluate the entire record *including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.* It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

(emphasis added). The regulation, therefore, requires the Appeals Council to consider the evidence if the following three requirements are met:

1. The evidence must be "new."

2. The evidence must be "material"

3. The evidence must relate to the period on or before the date of the administrative law judge hearing decision.

If these three requirements are met, the Appeals Council must consider the evidence, and must then review the case if it finds the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."[1] It should be noted that the regulations do not require a showing of good cause for failing to

---

1. This standard differs from the standard set out in 20 C.F.R. § 404.970(a)(3) (governing review of the ALJ's decision when new evidence is not submitted), which requires the Appeals Council to review the case if it finds that the ALJ's "action, findings or conclusions

... are not supported by substantial evidence." Therefore, it is possible to find that the Appeals Council committed an error of law in not reviewing the case, even though the ALJ's decision might have been supported by substantial evidence.

submit the evidence to the ALJ. 20 C.F.R. § 404.970(b).

## DISCUSSION

In the present case, the plaintiff seeks a remand for consideration of new evidence. The new evidence is a report of a psychological evaluation of the plaintiff on September 25, 2003, which contains I.Q. test results that would support a finding that the plaintiff meets Listing 12.05C. The plaintiff's attorney alleges that he submitted the additional evidence to the Appeals Council, but the administrative record does not contain that evidence.[2]

The Commissioner argues that the plaintiff failed to demonstrate good cause for failing to present this evidence to the ALJ. However, as will be seen, the appropriate inquiry is not whether there was good cause why the evidence was not submitted to the ALJ, but rather, whether there was good cause for failing to submit it at the administrative level. As noted above, it appears the plaintiff did in fact submit the evidence at the administrative level.

In this circuit it has been recognized that cases where evidence is submitted to the appeals council are governed by standards different from those where the evidence is not presented at the administrative level. In *Milano v. Bowen*, the court determined the Appeals Council was not

required to consider the proffered evidence under 20 C.F.R. § 404.970(b).[3] 809 F.2d 763, 766 (11th Cir.1987). The *Milano* court then, however, determined the claimant had "satisfied the more stringent standard of § 405(g)." *Id.* In the present case, since the evidence was not made part of the official administrative record, the court will likewise consider whether the more stringent requirements of 42 U.S.C. § 405(g) are met.[4]

■  In this circuit a three prong test is applied to determine whether a remand for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g) is proper. The claimant must establish:

(1) That there is new, noncumulative evidence;

(2) That the evidence is material; and

(3) That there is good cause for failure to submit the evidence at the administrative level.

*Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir.1986). The Commissioner does not argue that the evidence failed to meet the first two requirements. It is clear to the court that the evidence is new (it was not in existence at the time of the ALJ hearing) and noncumulative (no other report contains I.Q. test results). To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the admin-

2. It appears that two attorneys filed requests for review with the Appeals Council, which perhaps caused confusion. The request for review filed by the plaintiff's present attorney asserts that it is because "of new and substantial evidence." [R 9] This supports his claim that the evidence was in fact submitted to the Appeals council. The Commissioner has not argued that the evidence was not submitted to the Appeals Council.

3. The version of the regulation in effect at that time required that new evidence be "submitted [to the Appeals Council] with the request for review." (New evidence is no long-

er required to be submitted along with the request for review.) The Appeals Council granted an extension of time to submit new evidence, which the plaintiff missed by one day.

4. If, as appears to be the case, the evidence was in fact submitted to the Appeals Council, the Appeals Council would have been required to consider it under the regulations. Therefore, even if the requirements of 405(g) were not met, the proper course would be for the case to be remanded for an inquiry into whether the evidence was in fact submitted to the Appeals Council.

istrative result." *Caulder*, at 877 Clearly I.Q. testing showing the plaintiff might meet Listing 12.05C meets this standard.

The Commissioner cites *Milano* to support her argument that good cause does not exist for the plaintiff's failure to submit the evidence to the ALJ at the administrative level:

Plaintiff has not proven, however, that there is good cause for his failure to submit the evidence to the ALJ at the administrative level. In *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir.1987), the Eleventh Circuit noted that the "good cause" requirement was designed to stop claimants from seeking after-acquired evidence (i.e. evidence after the ALJ has ruled on their case) and using such evidence as a "backdoor" means of appeal of the ALJ's final decision. That is what has occurred in this case as Plaintiff has not presented any reason for not obtaining the consultative examination and testing earlier so that Dr. Crowder's report.

(Comm'r's Br. at 8.) The Commissioner's selective citation of *Milano* is misplaced. In *Milano*, following the ALJ's unfavorable decision, the claimant, Milano, timely requested review by the Appeals Council. 809 F.2d at 765. After the ALJ's decision, but before the time limit for submitting new evidence to the Appeals Council, a psychological examination was performed by a clinical psychologist. *Id.* at 766. The report of this examination reflected the opinion of Dr. Norman Bills that Milano suffered from a severe psychological disability. *Id.* at 765. However, as discussed above, the evidence was submitted one day after the time limit for submitting new evidence to the Appeals Council. *Id.*

The *Milano* court found the evidence "plainly new noncumulative evidence that would be material to the ALJ's determination" and found itself bound by *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir.1985):

The binding precedent of *Cherry*, 760 F.2d 1186, mandates this conclusion. In *Cherry*, the claimant complained of nerves, headaches and kidney problems. The ALJ determined that, despite her exertional impairments, Cherry was capable of performing unskilled sedentary work and, thus, that she was not disabled. While Cherry's appeal from that decision was pending before the district court, she presented new evidence to the district court and the Appeals Council consisting of a medical report and answers to interrogatories which established that she suffered from significant psychological disorders. We recognized that this report constituted new evidence, as it was the product of the only comprehensive psychological evaluation of Cherry's mental condition. We further determined that, because this new evidence suggested the existence of non-exertional impairments, it constituted material new evidence and gave rise to a reasonable possibility that the administrative outcome would be changed. *Cherry*, 760 F.2d at 1193.

*Id.* at 766. In *Milano*, the court considered the only difficult question to be whether there existed good cause for failure to submit the evidence within the time limit imposed by the Appeals council. *Id.* at 766. The court found no guidance in the legislative history of section 405(g) and turned to prior circuit precedent.

We have previously recognized that good cause for failing to present evidence may exist where the evidence did not exist at the time of the administrative proceeding. *See Cherry*, 760 F.2d at 1192. Here, however, the evidence was available at the administrative proceeding; it simply was not considered by the Appeals Council because it was not timely filed.

We nonetheless conclude that a filing that was mailed one day after the extended time period, such as that involved in this case, satisfies the good cause requirement of § 405(g). First, the procedural default is de minimus. Ample time remained for the Appeals Council to consider and act upon the evidence which Milano had submitted. No administrative delay could possibly have resulted from Milano's action.

Second, we believe that the good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process. The requirement was designed to prevent claimants from attempting to withhold evidence "with the idea of 'obtaining another bite of the apple' if the Secretary decides that the claimant is not disabled." *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 834 (3rd Cir.1984) (citation omitted). The good cause requirement was designed to avoid the danger of "encouraging claimants to seek after-acquired evidence, and then use such evidence as an unsanctioned 'backdoor' means of appeal." *Id.* Milano's de minimus procedural default does not reflect any bad faith attempt to manipulate the administrative process. Indeed, it suggests an attempt, though unsuccessful, to fully comply with administrative requirements.

Finally, in *Cherry,* this court found good cause and remanded for the Secretary to consider very similar new evidence. In *Cherry,* the new evidence was not presented until the district court level, whereas the new evidence in this case was presented considerably more promptly, i.e., mailed only one day after the time specified by the Appeals Council for submitting same. In light of *Cherry,* we conclude that the good cause requirement has been satisfied here. It is hard to imagine that the good cause

requirement could be construed so that a de minimus procedural default, as here, would not qualify. *Id.* at 766–67.

■ The court finds the present case indistinguishable from *Milano.* It is clear from *Milano* that the question is not whether there is good cause for failure to present the evidence at the ALJ level, but rather for failure to present it at the administrative level, which includes the Appeals Council stage. It appears clear that in the present case the plaintiff attempted to comply with the administrative requirements for presenting new evidence to the Appeals Council. There is no suggestion that the plaintiff withheld the evidence from the Appeals Council in a bad faith attempt to use it as a "backdoor means of appeal." To the contrary, it is evident that the plaintiff wished the evidence to be considered at the administrative level.

■ Even if the Commissioner was correct in asserting that the plaintiff must show good cause why the evidence was not submitted to the ALJ, is seems clear that the precedent of this circuit is that good cause exists when the evidence is not in existence. In *Caulder,* the court made it clear that good cause exists when the evidence was not in existence at the time of the administrative proceedings. 791 F.2d at 878 ("We ... find that Caulder did establish good cause for failure to submit the evidence at the administrative level because the evidence did not exist at that time.") The *Caulder* court noted there was no indication that Caulder had "procrastinated in obtaining copies of evidence *readily* available." *Id.* at 879 (emphasis added). In the present case, the psychological examination and I.Q. testing were not "readily available" to the plaintiff. It should be self evident to the Commissioner that an applicant for SSI benefits might not possess the financial means to pay for

consultative psychological examinations. The *Caulder* court clearly had in mind cases in which the records were already in existence, since it referred to "obtaining copies" of the evidence. The Commissioner seeks to place a requirement on claimants that is not part of the regulatory scheme. As noted above, claimants are permitted to submit new evidence at each step of the administrative review process. Requiring the claimant to produce readily obtainable treatment records is much different from requiring a claimant to pay for consultative examinations.

■ It is the longstanding rule in this circuit that the ALJ is charged with the responsibility of ensuring that the record is properly developed. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir.1988)(quoting *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984)) (internal quotation marks omitted). In *Caulder,* the court explained the obligation of the ALJ to develop a full record:

> Although the claimant has the burden of proving he is under a disability, the ALJ must inquire fully into the matters at issue. *Ford v. Secretary of Health & Human Services,* 659 F.2d 66, 69 (5th Cir. Unit B 1981)[The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.] An "administrative decision is not supported by substantial evidence if the administrative law judge does not have before him sufficient facts on which to make an informed decision." *Id.* Consultative examinations are not required by statute, but 20 C.F.R.

§ 404.1517 provides for them where warranted.

791 F.2d at 878 (footnote bracketed and inserted). The court explained that the new evidence submitted by Caulder "fill[ed] a gap as to material facts that resulted from the ALJ's inadequate development of the record." *Id.* More importantly, the court found that the inadequate development of the record by the ALJ prevented his decision from being supported by substantial evidence: "Without this evidence, a proper view of the case is skewed, making it impossible to conclude that a decision is supported by substantial evidence." *Id.*

■ In the present case, the proffered evidence fills a gap in the record that, as in *Caulder,* "resulted from the ALJ's inadequate development of the record." The ALJ had before him two psychological assessments.

The ALJ relied heavily on the assessment of the Social Security Administration's consultant, Dr. Atkinson, Ph.D., to support his conclusion that the plaintiff's mental impairments were not disabling. Dr. Atkinson found the plaintiff's general information normal. Dr. Atkinson noted that he could name the president and tell time, but could not name five large American cities. [R 248] His thought and concentration was assessed as slow. [R 248] He could subtract serial fives, but not sevens. He could count to 20. He could spell the word "world" backwards and his reasoning was seen as good. Based upon "clinical observation and information provided by other sources," Dr. Atkinson believed the plaintiff was "likely to be functioning in the average range." [R 249] However, he did not administer psychometric testing. Dr. Atkinson concluded the plaintiff "is not severely mentally ill or mentally retarded." [R 250]

The plaintiff was also assessed at the request of his attorney by Dr. Walker, a licensed professional counselor. Dr. Walker attempted to administer the Personality Assessment Inventory (PAI), which requires a fourth grade reading level. [R 324] Dr. Walker concluded the results were not valid due to "his reading difficulties and apparent confusion." [R 324] Dr. Walker believed this showed the plaintiff was unable to read and comprehend material at the fourth grade level.

In addition to the medical evidence, the plaintiff testified at his ALJ hearing that he had not completed the seventh grade when he quit school. [R 364] He further testified that he was he was almost 16 at the time and had failed two grades. [R 364]

When faced with a psychological evaluation indicating the plaintiff could not read at the fourth grade level and the plaintiff's testimony that he had failed two grades before entering the seventh grade, the ALJ should have ordered I.Q. testing. Since Dr. Walker's examination was after Dr. Atkinson's, Dr. Atkinson did not have access to that report, which indicated the plaintiff could not read at the fourth grade level. This might have changed his assessment. Dr. Atkinson's report does contains several indicia of significantly below average intelligence (e.g., the inability to name five large cities and slow thought process.) Two key elements of his report are ambiguous. His summary opinion that the plaintiff was "functioning in the average range" comes at the end of the section of his report entitled "Mental Status Exam." Therefore, it appears this was not an assessment of the plaintiff's I.Q., but an overall assessment of his mental status. Additionally, Dr. Atkinson's conclusion that the plaintiff "is not severely mentally ill or mentally retarded" is ambiguous, in that it might be only an assessment that the plaintiff is not "severely mentally re-

tarded." Without intelligence testing, the record was incomplete and substantial evidence does not support the ALJ's decision. Proper development of the record required such testing in light of the evidence before the ALJ, and it was reversible error not to order it.

### CONCLUSION

■■■ The new evidence submitted by the plaintiff satisfies all the requirements for a remand under sentence six of 42 U.S.C. § 405(g). In addition, the ALJ failed to properly develop the record as to whether the plaintiff met Listing 12.05C. Therefore, the action will be remanded under both sentences four and six of 42 U.S.C. § 205(g). On remand the Commissioner shall consider the new evidence submitted by the plaintiff. Should the Commissioner deem the I.Q. testing done by Dr. Crowder questionable, she may have the plaintiff tested by a qualified Social Security Administration consultant. On remand the Commissioner shall properly consider whether the plaintiff meets or equals the I.Q. listings and shall also consider the plaintiff's mental and physical impairments in combination.