[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14077
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00157-LGW-RSB

JERRY F. POPHAM, JR.,

Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 28, 2017)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jerry Popham appeals the district court's order affirming the final decision of the Social Security Commissioner denying Popham's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). After review, we affirm.

## I.  BACKGROUND

The Administrative Law Judge ("ALJ") concluded that Popham was not disabled because, although he had several severe impairments, including bipolar disorder and major depression, that prevented him from performing his past relevant work at a pulp mill, Popham retained the residual functional capacity ("RFC") to perform other jobs in the economy.  Popham requested Appeals Council review and submitted additional evidence, including: (1) a mental residual function capacity ("MRFC") questionnaire completed and signed by Dr. Douglas Cooper, a physician, and Tamara Thorn, a physician's assistant, both of whom had treated Popham at Gateway Behavioral Health Services ("Gateway"); and (2) progress notes from Gateway between August 8, 2013 and March 20, 2014, after the ALJ's decision.  The Appeals Council, in denying review, stated that it had considered Popham's additional evidence and "found that this information d[id] not provide a basis for changing the [ALJ's] decision."

2

## II.  DISCUSSION

On appeal, Popham argues that the Appeals Council erred in denying his request for review and failed to consider adequately the MRFC questionnaire.[1] Popham contends that the MRFC questionnaire, when properly considered, supports only one conclusion, that he is disabled.  We disagree and explain why.

### A.    Petitions for Appeals Council Review Based on New Evidence

Generally, a claimant may present new evidence at each stage of the administrative process.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. §§ 404.900(b), 416.1400(b).  If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant.  20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b).  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision."  Id. §§ 404.970(a)(5), 416.1470(a)(5).  The evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome."  Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987); see also 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  New evidence must not be cumulative of other evidence in the record.  See Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986).  The Appeals

---

[1]On appeal, Popham does not make any argument as to Gateway's post-decision progress notes.  Instead, Popham argues only that the Appeals Council erred in light of the MRFC questionnaire.  Thus we address only the import of the MRFC questionnaire.

Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. Ingram, 496 F.3d at 1261 (quotation marks omitted).

The Appeals Council, however, is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review. Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 783-85 (11th Cir. 2014); see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 852-53 (11th Cir. 2015). Where the Appeals Council added the new evidence to the record, stated it had considered the new evidence, and denied review because "the information did not provide a basis for changing the ALJ's decision," the Appeals Council's explanation is sufficient, at least when the record does not provide a "basis for doubting the Appeals Council's statement that it considered [the claimant's] additional evidence." Mitchell, 771 F.3d at 782-84 (distinguishing Epps v. Harris, 624 F.2d 1267 (5th Cir. 1980), in which the new evidence directly undermined the ALJ's stated rationale for its decision and thus "provided us with an affirmative basis for concluding the Appeals Council failed to evaluate the claimant's new evidence"); see also Parks, 783 F.3d at 853 (further distinguishing Epps because the appeal arose in a different procedural context in which the Appeals Council affirmed the ALJ's decision rather than denied a request for review).

4

**B.    Chronological Relevance**

As an initial matter, the government points out that Dr. Cooper and PA Thorn completed the MRFC questionnaire after the ALJ's July 3, 2013 decision, outside the relevant time period under consideration by the ALJ.  The Appeals Council, however, accepted and considered the MRFC questionnaire, which indicates the Appeals Council concluded the MRFC questionnaire related to the relevant period.  See 20 C.F.R. §§ 404.970(c), 416.1470(c) (providing that if the claimant submits additional evidence that does not relate back to the relevant period, the Appeals Council will provide notice explaining why it did not accept the additional evidence).  Moreover, the government does not go so far as to argue that the MRFC questionnaire does not relate back.  Accordingly, for purposes of this appeal, we assume the MRFC questionnaire is chronologically relevant.[2]

---

[2]We note that, according to Gateway's progress notes, Popham received mental health treatment from its medical staff, including Dr. Cooper and PA Thorn, beginning on February 29, 2012, i.e., within the relevant period of August 8, 2009 (the alleged onset date) to July 3, 2013 (the date of the ALJ's decision).  In fact, at the ALJ hearing Popham testified that he was being treated by psychiatrists at Gateway.  Thus, the fact that Dr. Cooper and PA Thorn completed the questionnaire on August 8, 2013, after the ALJ's decision, does not mean the evaluation did not relate to the relevant period.  In any event, this Court has "recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." Washington v. Soc. Sec. Admin., Comm'r., 806 F.3d 1317, 1322 (11th Cir. 2015) (concluding doctor's post-decision evaluation was chronologically relevant where the doctor knew about the claimant's symptoms during the relevant period and had reviewed the claimant's treatment records from that period).

**B.    Popham's Petition for Appeals Council Review**

Considering the record as a whole, including the MRFC questionnaire, the Appeals Council properly denied Popham's request for review.  First, we reject Popham's argument that the Appeals Council failed to adequately explain its reason for denying review.  The Appeals Council stated that it had considered Popham's additional evidence and had found that this new information did not provide a basis for changing the ALJ's decision.  Under our precedent, no further explanation was required of the Appeals Council.  See Parks, 783 F.3d at 852-53; Mitchell, 771 F.3d at 784.  Furthermore, nothing in the record provides a basis for concluding the Appeals Council did not in fact consider the MRFC questionnaire. See Mitchell, 771 F.3d at 783-84.

Second, the MRFC questionnaire does not render the ALJ's denial of benefits erroneous.  See Ingram, 496 F.3d at 1262 (explaining that when the Appeals Council considers the new evidence but denies review, our review "must consider whether that new evidence renders the denial of benefits erroneous").  In the MRFC questionnaire, Dr. Cooper and PA Thorn stated that Popham suffered from mood swings and threatening behavior and was noncompliant with his medications.  They opined that his prognosis was fair if he took his medications, but poor if he did not.  They listed 23 "signs and symptoms," which included, among other things, perceptual or thinking disturbances, paranoid thinking,

6

hallucinations or delusions, flight of ideas, illogical thinking, and pathologically inappropriate suspiciousness or hostility.  As to work-related mental abilities and aptitudes, they opined that Popham had no useful ability to: (1) accept instructions and respond appropriately to criticism from supervisors; (2) get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; (3) respond appropriately to changes in a routine work setting; and (4) deal with normal work stress.  Dr. Cooper and PA Thorn further opinioned that Popham could not satisfactorily: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) perform at a consistent pace without an unreasonable number and length of rest periods; (3) ask simple questions or request assistance; (4) travel in an unfamiliar place; and (5) use public transportation.  They believed that these limitations were "[l]ifelong" and that Popham would have difficulty working a regular job on a sustained basis because he would become volatile at a job site.

The opinions in the MRFC questionnaire, however, are inconsistent with the other evidence in the record, including other mental health treatment records, Popham's own testimony, the opinions of three consulting psychologists, including one who examined Popham, and, perhaps most importantly, Gateway's own progress notes.

Popham's other mental health records do not indicate the same severe impairments reflected in the MRFC questionnaire.  For example, during Popham's two voluntary hospitalizations in 2009, he was depressed and anxious, but he was also alert, oriented, and cooperative.  Popham had no psychosis, hallucinations, delusions, or illusions, and he had normal cognitive functioning, attention, calculation, orientation, and memory, and he was able to participate well in group settings, contrary to the determinations in the MRFC questionnaire that he could not work with others.  Similarly, between December 2009 and January 2013, while being treated by Drs. Jennifer Miller and Eddy Vincent, Popham's thought process was generally logical, his behavior was appropriate, he was alert and oriented, his insight and judgment were fair, and there was no impairment of his cognition or acute mental distress noted.

The MRFC questionnaire is also inconsistent with Popham's work history and self-reported activities.  At the hearing, Popham testified that he did many activities involving other people, such as attending church fellowship meetings, participating in a prison ministry, visiting nursing home residents, bowling, and spending time with family.  He also said that he had worked at the same job at a pulp mill for 29 years.  This testimony contradicts the opinion in the MRFC questionnaire that Popham's mental limitations were severe and lifelong.  Notably, while hospitalized in 2009, Popham told Dr. Vincent that his depression began

"some years" earlier as a result of a gambling addiction, but that his recent depression, mood swings, and anxiety were caused by the new stressors of injuring his back and then losing his job.

In addition, the medical records from Gateway during the relevant period do not support Dr. Cooper and PA Thorn's opinions in the MRFC questionnaire.[3] Gateway's treatment notes indicate that from February 2012 to January 2013, Popham was treated for mood swings and depression, but that he had logical thought process and generally appropriate behavior, he was alert and oriented, he did not report delusions, hallucinations or mania, his insight and judgment were fair, and he had no cognitive impairment. Popham reported arguing with family members only once, and PA Thorn agreed to adjust Popham's medication.[4] On other visits, Popham reported to Dr. Cooper "no concrete complaints," except myalgia/parasthesias and to PA Thorn that he was "doing well" and that his "meds/mood are stable." There is no documentation in the progress notes of noncompliance with medications or of the kind of violent, threatening behavior reported in the MRFC questionnaire. There was also no documentation of many of

---

[3]We note that Gateway's post-decision progress notes for Popham's treatment between August 2013 and March 2014 also do not appear to support the opinions expressed in the MRFC questionnaire.

[4]During a July 23, 2012 visit, Popham told PA Thorn that he had fought with his mother over money because his mother did not want him to contribute to the prison ministry and with his wife about cleaning the house. There were no reports, however, of violent or threatening behavior requiring police intervention, as reported in the MRFC questionnaire.

9

the "signs and symptoms" identified in the MRFC questionnaire, such as pathological dependence, passivity or aggressivity; intense and unstable interpersonal relationships and impulsive and damaging behavior; perceptual or thinking disturbances; hallucinations or delusions; flight of ideas; deeply ingrained, maladaptive patterns of behavior; illogical thinking; pathologically inappropriate suspiciousness or hostility; or involvement in activities that have a high probability of painful consequences which are not recognized.

Finally, the MRFC questionnaire is inconsistent with the psychological evaluation by Dr. Greg Cox, a consulting psychologist who reviewed Popham's medical records and examined Popham in May 2012.[5]  Popham reported to Dr. Cox that: (1) in school he made good grades without special education services, was shy, but had a few good friends, had great relationships with his teachers, and an unremarkable attendance and disciplinary history; (2) at his pulp mill job, he had good relationships with his co-workers and bosses and was able to deal

---

[5]Popham argues that the Appeals Council, in denying review, ignored the opinion of Dr. Cooper, a treating psychiatrist, and instead "perfunctorily" approved the ALJ's reliance on the "diametrically opposed opinion" of Dr. Cox, a consulting psychologist.  In evaluating medical opinions, however, the ALJ is not required to give greater weight to the opinion of a treating doctor where it is not bolstered by the evidence or is inconsistent with the doctor's own records. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  Here, as the ALJ found, Dr. Cox's opinion, which was based on his review of the record evidence, his own evaluation, and objective diagnostic tests, was "consistent with the record as a whole."  Dr. Cooper's opinion, on the other hand, was inconsistent not only with Dr. Cox's opinion, but also with, as we discuss above, the other evidence in the record, including Dr. Cooper's own progress notes.  In other words, Dr. Cooper's opinion was not entitled to greater weight than Dr. Cox's opinion and did not render the ALJ's decision "contrary to the weight of the evidence."  See Ingram, 496 F.3d at 1261.

10

effectively with the public; (3) he first noted psychological problems in 2009, which was when he injured his back and lost his job, and (4) his previous inpatient and outpatient interventions and his medications, Paxil and lithium, were helpful. Popham said his current stressors were "confusion, difficulty making decisions, grief regarding [the] recent loss of [his] sister, and mind racing."  Popham said his daily activities included visiting nursing homes, spending time with his grandson and friends, and doing some prison ministry.

Dr. Cox's findings from the mental status examination included that: (1) Popham's attention was intact with some distractibility; (2) stress and frustration were noted secondary to the loss of his sister, but that Popham "managed stress and frustration adequately"; (3) Popham's mood and affect were variable but appropriate to the conversation; (4) his thought processes were goal-oriented and logical, with good social judgment and no evidence of hallucinations or delusions; (5) he followed directions easily; and (6) he exhibited no unusual behaviors, easily engaged Dr. Cox, had a good sense of humor, and was cooperative, compliant, and appropriately accepting of help.

As a result of his examination and two tests (Wechsler Memory Scale - Brief Cognitive Status Exam and Rey 15 item), Dr. Cox opined that Popham's depression, which was secondary to his injury and job loss, was severe in 2009, but "currently at a moderate level."  Although Popham reported manic symptoms, Dr.

11

Cox found that "evidence for thoroughly developed manic episode is not presented," but might be "masked by the lithium Mr. Popham takes." Dr. Cox believed Popham's prognosis for improvement was poor, and that while Popham's concentration and persistence appeared unaffected, his pace was slowed. Dr. Cox opined that Popham had no significant limitations in his ability to relate to others and to complete simple one-step and two-step instructions and had only mild limitations in his ability to maintain attention to do simple, repetitive tasks and withstand the stress and pressure associated with day-to-day work settings. Dr. Cox pointed out that Popham's work history was "not consistent with him losing functional ability with typical vocational stress and change."

In total, Dr. Cox's findings contradict the view expressed in the MRFC questionnaire that during the relevant time period Popham was unable to perform (either at all or to an employer's satisfaction) a number of work-related mental tasks, such as accepting instructions, getting along with co-workers, responding appropriately to supervisors, and handling stress. Notably, the two state psychologists who subsequently reviewed Popham's medical records agreed with Dr. Cox that Popham's mental impairments imposed only mild or moderate limitations.

In sum, the MRFC questionnaire submitted to the Appeals Council does not render the ALJ's denial of benefits erroneous.  Accordingly, the Appeals Council did not err in denying Popham's request for review based on this new evidence.

**AFFIRMED.**