[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11958
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-02237-AKK

AMBER ASHLEY,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 6, 2017)

Before HULL, MARCUS and ROSENBAUM, Circuit Judges.

PER CURIAM:

Amber Ashley appeals the district court's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for disability insurance benefits and supplemental security income, filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Applications and Medical History

On October 21, 2010, Ashley applied for benefits, alleging a disability onset date of September 29, 2010 due to injuries she sustained in her left hip and leg in a car accident.  As a result of her accident injuries, Ashley had several surgeries, including an open reduction internal fixation of her left hip and acetabulum with hardware placement for stabilization in October 2010 and a total left hip arthroplasty and removal of the hardware in July 2011.  Ashley was prescribed medication to manage pain in her back and left leg and advised to continue physical therapy.

Ashley's medical records showed that, in addition to her accident injuries, she had a history of other ailments, including, inter alia, migraine headaches, anemia subsequent to gastric bypass surgery in 2006, and anxiety, but those objective examinations were generally unremarkable.

2

**B.    ALJ Hearing**

At an October 2012 hearing before an administrative law judge ("ALJ"), Ashley and a vocational expert ("VE") Dr. Joseph Mann testified.  Ashley said that she broke her left leg, hip, and pelvis in the car accident and had to stop working as a construction worker due to her injuries.  Because of her injuries, Ashley could not sit or stand for longer than 15 or 20 minutes, frequently had to lie down, could bend only to a certain point, and occasionally used a wheelchair or walker.  Ashley said that she was in constant pain in her waist, left hip, and leg, and that while her medication reduced her pain somewhat, it made her drowsy and sick.

Ashley explained that (1) she had had gastric bypass surgery, surgery to remove a melanoma on her back, and surgery on her hands for tingling and numbness, (2) she suffered from anxiety and depression, and (3) she had "anemic issues" that sometimes made her tired and required her to go "to a medical facility to get blood."

**C.    ALJ's Decision**

Following the hearing, the ALJ issued an unfavorable decision on January 23, 2013.  Applying the five-step evaluation process, the ALJ found that: (1) Ashley met insured status through December 31, 2010 and had not engaged in substantial gainful activity since September 29, 2010; (2) Ashley had the severe impairments of left posterior wall acetabular fracture, left femoral head impaction

3

fracture, and left total hip arthroplasty;[1] (3) Ashley did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments;] (4) Ashley could not perform her past relevant work, but she had the residual functional capacity ("RFC") to perform sedentary work, and (5) considering Ashley's age (33), education, work experience, and RFC, there were jobs (such as surveillance system monitor) that existed in the national economy that she could perform.  As to Ashley's RFC in step four, the ALJ found that Ashley could sit for one hour at one time, could stand or walk for thirty minutes at one time, sit for six hours and stand and walk for one hour in an eight-hour work day, occasionally reach, frequently use her hands for handling, fingering, feeling, and push/pull movements, frequently use her right foot and occasionally use her left foot for operation of foot controls, occasionally balance or stoop, but she could never climb ladders or stairs, kneel, crouch, crawl, or work around unprotected heights.  Thus, the ALJ concluded that Ashley was not under a disability from September 29, 2010 through January 23, 2013.

In assessing Ashley's RFC, the ALJ concluded that "[t]he documentary record in this case does not support the existence of disabling limitations as the

---

[1]The ALJ found that Ashley had the non-severe impairments of migraine headaches, asthma, anemia, and anxiety that were considered in formulating Ashley's residual functional capacity.  Ashley does not challenge this finding on appeal.

result of claimant's medically determinable impairments."[2]  As to Ashley's statements that she could "not work on account of pain affecting her hip, pelvic area and left leg," the ALJ found that "[t]hese allegations . . . are not corroborated by substantial evidence considered on the record as a whole," including the clinical findings, opinions, and reports of examining and treating physicians, "as well as the claimant's admitted activities of daily living."  The ALJ further found that Ashley's "pain complaints appear to be conducive to prescribed medication treatment," and that Ashley's report of adverse side effects from medication was not reflected in the record.

## D.    Appeals Council's Decision

Ashley asked the Appeals Council to review the ALJ's decision and submitted additional treatment records, some of which were for treatment she received after the ALJ's January 23, 2013 decision.  The Appeals Council denied Ashley's request for review.  The Appeals Council stated that it had considered Ashley's reasons for disagreeing with the ALJ's decision and the additional evidence, which was listed in an attached Exhibit List and made a part of the record by a separate order.  This additional evidence consisted of correspondence from Ashley's attorney and medical records from healthcare providers, most of

---

[2]Although Ashley testified to bilateral hand numbness and tingling, the ALJ found that there were no clinical findings or diagnostic evidence in the record to confirm the existence of these symptoms or a medical cause for them and thus these symptoms could not be medically determined.  Ashley does not challenge this finding on appeal.

5

which pre-dated the ALJ's decision.  The Appeals Council found "that this information does not provide a basis for changing the [ALJ's] decision." [3]

The Appeals Council indicated that it had "looked at" the treatment notes dated after the ALJ's decision and determined that the ALJ "decided [Ashley's] case through January 23, 2013."  According to the Appeals Council, these documents included treatment notes from: (1) UAB Hematology Oncology dated March 2014; (2) Alabama Cancer Care dated November 2013 to April 2014; (3) Gadsden Regional Medical Center dated September 2013 to November 2013; and (4) Riverview Regional Medical Center dated November 2013 to February 2014. The Appeals Council concluded that "[t]his new information is about a later time," and "[t]herefore, it does not affect the decision about whether you were disabled beginning on or before January 23, 2013."  The Appeals Council explained that this new information was available in Ashley's electronic file in the event Ashley decided to apply again to determine whether she was disabled after January 23, 2013.

## E.    Motion to Remand in the District Court

In November 2014, Ashley filed her counseled complaint in the district court.  On June 18, 2015, Ashley filed a motion to supplement the record and a motion to remand proceedings to the Appeals Council.  Relevant to this appeal,

---

[3]The Appeals Council also noted that some documents were "exact copies" of treatment notes already in the record at Exhibits 10F and 11F and thus were not "new."

6

Ashley's motion to supplement sought to add the following medical records for treatment Ashley received after the ALJ's decision: (1) Alabama Cancer Care dated April 24, 2013 to August 5, 2013 ("Exhibit A"); (2) Gadsden Regional Medical Center dated April 20, 2013 ("Exhibit B"); (3) Dr. Thomas Thomasson of The Orthopaedic Center dated November 21, 2012 and April 23, 2013 ("Exhibit C"); and (4) notes from an independent medical examination and physical capacities form completed by Dr. Jarrod Warren on October 4, 2013 and medical records from visits to Dr. Janie Teschner at Mercy Medical Clinic on August 16, 2013 and September 16, 2013 ("Exhibit D").  Ashley asserted that she had submitted these documents to the Appeals Council, but the Appeals Council had refused to consider whether they were chronologically relevant and to make them part of the administrative record.  Ashley's motion to remand argued that the Appeals Council was required to consider these post-decision treatment records because they were chronologically relevant.

## F.    District Court's Denial of Motion to Remand and Affirmance

In a memorandum opinion, the district court ruled on Ashley's outstanding motions and affirmed the Appeals Council's decision.  The district court denied Ashley's motion to supplement to record with respect to Exhibits A, B, and C because the Appeals Council had already made them part of the record.  As to

7

Exhibit D, however, the district court granted Ashley's motion, stating that it would consider these documents in reviewing Ashley's claims.

The district court denied Ashley's motion to remand the case to the Appeals Council. The district court rejected Ashley's argument that the Appeals Council had failed to include chronologically relevant documents in the record merely because they post-dated the ALJ's decision.

The district court affirmed the Commissioner's decision denying benefits. In relevant part, the district court determined that the Appeals Council properly considered Ashley's new evidence and made the majority of the new evidence part of the record. The district court also concluded that the decision to deny benefits was supported by substantial evidence even when Ashley's new evidence was considered.

## G.    Post-Judgment Motions in the District Court

Ashley filed a motion pursuant to Federal Rule of Civil Procedure 59(e) seeking to set aside the district court's memorandum opinion.[4] Ashley argued that under this Court's recent decision in Washington v. Social Security Administration, 806 F.3d 1317 (11th Cir. 2015), the Appeals Council had committed legal error in refusing to consider some of her new evidence.

---

[4]Although Ashley labeled her motion as a "motion for a new trial," which is governed by Rule 59(a) through (d), there had been no trial in Ashley's case. As the district court noted, the motion was actually a motion to alter or amend the judgment pursuant to Rule 59(e).

Specifically, Ashley identified the documents that the district court placed in the record when it granted in part Ashley's motion to supplement the record—Dr. Warren's October 4, 2013 independent medical evaluation and physical capacities form and Dr. Teschner's August 16, 2013 and September 6, 2013 treatment notes.

While Ashley's Rule 59(e) motion was pending, Ashley filed a second motion to remand to the Appeals Council. This time, Ashley contended that remand was necessary so that the ALJ could re-evaluate the intensity, persistence, and limiting effects of Ashley's pain in accordance with new Social Security Ruling ("SSR") 16-3p, which Ashley argued applied retroactively.

The district court denied both Ashley's Rule 59(e) motion and her second motion to remand. As to the Rule 59(e) motion, the district court concluded that Washington was distinguishable and did not help Ashley and that Ashley could not use a Rule 59(e) motion to relitigate whether the Appeals Council had properly considered her new evidence. As to the second motion to remand, the district court concluded that SSR 16-3p did not apply retroactively but, even if it did, the ALJ's evaluation of Ashley's symptoms was consistent with it.

## II. DISCUSSION

On appeal, Ashley contends that: (1) the Appeals Council erred by omitting from the record and failing to adequately consider her new evidence dated after the ALJ's decision; (2) when this new evidence is considered, the ALJ's decision to

9

deny benefits is not supported by substantial evidence; and (3) the district court erred in denying her first motion to remand and her Rule 59(e) motion in light of this Court's precedent in Washington.[5]

## A.    Appeals Council's Review of New Evidence

Generally speaking, a social security claimant is permitted to present new evidence at each stage of the administrative process, including before the Appeals Council. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. §§ 404.900(b), 416.1400(b).  The Appeals Council must consider the claimant's new evidence if it is new, material, and chronologically relevant.  20 C.F.R. §§ 404.970(b), 416.1470(b) (2016); see also Washington v. Soc. Sec. Admin., 806 F.3d 1317, 1320 (11th Cir. 2015).[6]  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2016).  The evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome."  Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987);

---

[5]On appeal, Ashley does not raise the argument asserted in her second motion to remand that the ALJ must re-evaluate her subjective symptoms based on new SSR 16-3p, which she contended was retroactively applicable.  Nonetheless, we note that this Court recently concluded that SSR 16-3p, which became effective on March 28, 2016 (two months after the ALJ's decision in this case), is not retroactive.  See Hargress v. Soc. Sec. Admin., 874 F.3d 1284, 1290 (11th Cir. 2017).

[6]The Social Security Administration recently revised its regulations, including amending 20 C.F.R. §§ 404.970 and 416.1470, effective January 17, 2017.  See 81 Fed. Reg. 90987, 90994, 90996 (Dec. 16, 2016).  Ashley does not argue that these revised regulations apply to, or affect the outcome of, her appeal.  We apply the regulations in effect at the time of the ALJ's decision. See Hargress, 2017 WL 5077522, at *4-5 & n.4.

see also 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2016).  New evidence must not be cumulative of other evidence in the record.  See Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986).  The Appeals Council "must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Ingram, 496 F.3d at 1261 (quotation marks omitted).[7]  "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate."  Washington, 806 F.3d at 1321.

This Court has recognized that in specific circumstances, "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant."  Id. at 1322-23.  In Washington, these "specific circumstances" existed when the record showed that the medical opinion was based on a review of the claimant's medical history and the claimant's report of his symptoms during the relevant time period and there was no evidence of a decline in the claimant's condition since the ALJ's decision.  Id.; see also Hargress v. Soc. Sec. Admin., ___ F.3d ___, No. 17-11683, 2017 WL 5077522, at *5 (11th Cir. November 6, 2017).  Evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether the claimant was disabled during the relevant

---

[7]This Court reviews de novo the Appeals Council's refusal to consider a claimant's new evidence.  Washington, 806 F.3d at 1320-21.

time period under review.  See Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999).

**B.    Ashley's New Evidence Considered by the Appeals Council**

Ashley contends that the Appeals Council failed to consider her new medical records—from the Alabama Cancer Care, the Gadsden Regional Medical Center, Dr. Thomas Thomasson of The Orthopaedic Center, Dr. Jane Teschner of Mercy Medical Clinic, and Dr. Jarrod Warren—solely because they were dated after the ALJ's January 23, 2013 decision "without determining if the records were chronologically relevant."

At the outset, we note that there has been considerable confusion about which of Ashley's post-decision submissions to the Appeals Council is in the administrative record.  Some of the post-decision medical records—from the Gadsden Regional Medical Center dated April 20, 2013 and from the Alabama Cancer Care dated April 2013 to August 2013—were placed in the administrative record by the Appeals Council at Exhibit 19F.  The Appeals Council found that these medical records, along with the others listed in its Exhibit List, did not provide a basis for changing the ALJ's decision. [8]   Thus, there is no merit to

_____

[8]The placement of these post-decision medical records in the administrative record may have been an error.  The description of Exhibit 19F in the Appeals Council's exhibits list misidentifies the records as "Alabama Cancer Center dated June 2012."  In fact, Exhibit 19F consists of medical records from Riverview Regional Medical Center dated June 8, 2012, The Orthopedic Center dated October 24, 2012, the Alabama Cancer Center dated April 24, 2013

12

Ashley's claim that these medical records were not in the administrative record and thus not considered by the Appeals Council in denying her petition for review.

## C.    Ashley's New Evidence Not Considered by the Appeals Council

The remaining post-decision medical records were not placed in the administrative record but rather in the electronic file.  These medical records are dated from September 2013 to April 2014 and are from various medical providers, including the Gadsden Regional Medical Center, the Alabama Cancer Care, the Riverview Regional Medical Center, and the UAB Hematology Oncology Clinic.  The Appeals Council stated that it had "looked at" these medical records and concluded that they were "about a later time" and therefore did "not affect the decision about whether [Ashley was] disabled beginning on or before January 23, 2013."  This ruling is the focus of Ashley's appeal.

Ashley argues that the Appeals Council did not determine whether the post-decision records she submitted from the Gadsden Regional Medical Center, the Alabama Cancer Care, UAB Hematology, and the Riverview Regional Medical Center were chronologically relevant.  Based on this Court's recent decision in Hargress, we disagree.  The claimant in Hargress, like Ashley, submitted to the Appeals Council new evidence that was dated after the ALJ's decision.  874 F.3d

---

through August 5, 2013, and the Gadsden Regional Medical Center dated April 20, 2013. Notably, all of the other medical records in the Appeals Council's Exhibit List predated the ALJ's decision.

at 1286. The Appeals Council there, as here, stated that it had "looked at" the claimant's new evidence and concluded that it was "about a later time" and did not "affect the [ALJ's] decision" that the claimant was disabled on or before the ALJ's decision. Id. at 1286-87. This Court explained that in so ruling, the "Appeals Council declined to consider these new medical records because they were not chronologically relevant." Id. at 1291. Here, like in Hargress, the Appeals Council did make the determination that Ashley's new medical records dated after the ALJ's decision were not chronologically relevant and refused to consider them further in reviewing the ALJ's decision.

Moreover, we agree that these post-decision medical records are not chronologically relevant. Most of them relate to Ashley's treatment for blood-related disorders, including pernicious anemia, pancytopenia, leukopenia, and a type of cancer related to bone marrow called myelodysplastic syndrome, all of which began after a visit to the Gadsden Regional Medical Center's emergency room on April 20, 2013.[9] The emergency room doctor referred Ashley to a hematologist, Dr. Ashvini Sengar at Alabama Cancer Care, who supervised Ashley's ongoing treatment of these hematologic disorders. According to the

---

[9]To be sure, these records contain notations that Ashley sometimes complained of left leg and hip pain, but these complaints were not the focal point of her treatment at the Gadsden Regional Medical Center. Notably, during her April 2013 hospitalization for anemia, doctors ordered a CT scan of her left prosthetic hip, which was normal. The radiologist stated that the "[o]rthopedic components appear in good position and alignment" and that "[n]o definite acute abnormalities can be identified."

medical records, Dr. Sengar administered iron injections in May and July 2013. Between October and November 2013, doctors performed several ultrasounds and bone marrow aspirations and biopsies, gave Ashley several blood transfusions, and conducted regular blood tests.

On January 5, 2014, Ashley presented to the Riverview Regional Medical Center's emergency room with complaints of cough, nausea, vomiting and weakness with aches and pains.  Ashley was admitted to the hospital for four days for further evaluation of acute asthmatic bronchitis and symptomatic anemia and was treated for, among other things, a copper deficiency and hypokalemia.  When Ashley returned to the emergency room on February 2, 2014, complaining of cough, dizziness and weakness, she was readmitted for further treatment for bronchitis and copper deficiency.

In March 2014, UAB Hematology treated Ashley for chronic pancytopenia from copper deficiency, which had progressively worsened to the point that Ashley was receiving blood transfusions one or two times per month.  The treating doctor noted that Ashley was already receiving oral copper, B12 shots, and regular infed (i.e., iron) infusions, prescribed an IV copper treatment, and opined that Ashley would "probably need a schedule of lifelong copper infusions."

Ashley's pre-decision medical records contain only two references to outpatient treatment for iron-deficiency anemia in November 2010 and October

15

2012.  Accordingly, the ALJ found that Ashley's anemia treatment was "very sporadic" and that her anemia was a non-severe impairment.  Ashley has never disputed this finding.

Furthermore, Ashley's post-decision medical records indicate that it was only in the latter half of 2013 and into 2014 that her anemia worsened, resulting in multiple hospitalizations, new diagnoses of additional blood disorders, and ongoing blood transfusions, copper infusions, and iron injections.  Accordingly, while these post-decision medical records about treatment for new and worsening conditions may be the basis for a new application for benefits, they do not relate back to the period on or before the ALJ's January 23, 2013 decision.  See Wilson, 179 F.3d at 1279.  Further, because these post-decision medical records do not relate back, the Appeals Council was not required to make them part of the administrative record or to consider them further in reviewing the ALJ's decision to deny benefits.  Accordingly, we do not address Ashley's argument that when these post-decision medical records are considered, the ALJ's decision to deny benefits is not supported by substantial evidence.

This leaves Dr. Thomasson's treatment notes on November 21, 2012 and April 23, 2013, Dr. Teschner's treatment notes on August 16, 2013 and September 6, 2013, and Dr. Warren's independent medical evaluation on October 4, 2013 and accompanying physical capacities form.  Although correspondence from Ashley's

attorney to the Appeals Council suggests these records were sent by fax to the Appeals Council on September 30, 2013, and December 4, 2013, they do not appear in either the administrative record or the electronic file.[10]  It is unclear what happened to these medical records at the agency level.  The Appeals Council did not mention them in denying Ashley's petition for review.

Under these circumstances, we assume the Appeals Council did not "look at" these medical records at all, much less determine whether they were chronologically relevant.  Further, because these medical records were submitted to the district court in Ashley's motion to supplement the record (as Exhibits C and D) and were the subject of Ashley's first motion to remand and subsequent Rule 59(e) motion, we will treat them as if they were presented for the first time to the district court and address them in that context.  Cf. Milano v. Bowen, 809 F.2d 763, 766-67 (11th Cir. 1987) (treating new evidence that the Appeals Council refused to consider because it was untimely as evidence submitted for the first time to the district court).

**D.    New Evidence Submitted to the District Court**

Generally, a reviewing court is limited to the certified record of the evidence considered by the Commissioner.  Cherry v. Heckler, 760 F.2d 1186, 1193 (11th

---

[10]Although the district court stated that the Appeals Council made Dr. Thomasson's treatment notes part of the administrative record, on appeal, the Commissioner concedes that the district court was mistaken and that these records are not part of the administrative record.

17

Cir. 1985).  Pursuant to the sixth sentence of 42 U.S.C. § 405(g), a court may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence that "is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); see also Ingram, 496 F.3d at 1261.[11]

For a "sixth sentence remand" to be warranted, "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."  Hunter v. Soc. Sec. Admin., 808 F.3d 818, 821 & n.1 (11th Cir. 2015) (quotation marks omitted); see also Caulder, 791 F.2d at 877.

### E.    Ashley's New Evidence in Her Motion to Remand

#### 1.    Dr. Thomasson and Dr. Teschner

Here, Ashley has not shown that remand was warranted to consider the treatment records of either Dr. Thomasson or Dr. Teschner.  Dr. Thomasson's treatment notes, while chronologically relevant, are largely cumulative and not "material" because there is no "reasonable possibility that [they] would change the administrative outcome."  See Caulder, 791 F.2d at 877; Hyde, 823 F.2d at 459.

---

[11]This Court reviews de novo a district court's ruling on whether to remand in light of new evidence.  Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001).

Dr. Thomasson is Ashley's orthopedist and his treatment notes are for two follow-up visits on November 21, 2012 and April 23, 2013, following her left hip replacement on July 12, 2011. At each visit, Dr. Thomasson noted that Ashley was "doing fair," but complained of pain. Dr. Thomasson's physical exams were unremarkable, noting, among other things, that Ashley's incision had healed, that she had "good range of motion," and that her "motor and sensations are intact distally." At the second visit, x-rays showed that Ashley's "total hip arthroplasty was concentrically reduced," there were "no fractures or dislocations" and the "hardware was in good position." Dr. Thomasson advised Ashley to "continue to weight bear as tolerated." Dr. Thomasson noted that Ashley had a "[n]ew complaint of [her] left leg burning and tingling down to her foot," for which he planned to obtain an MRI to "rule out nerve impingement." At both visits, Dr. Thomasson declined Ashley's requests for pain medication, instructing her to follow-up with her primary care or pain management doctor.

As for the treatment notes of Dr. Teschner at the Mercy Medical Clinic, they do not appear to be chronologically relevant. At the first visit, on August 16, 2013, Ashley was seen as a new patient for pain in her hip, leg, lower back and neck, for which Dr. Teschner prescribed a month's supply of pain medication. There is no indication that Dr. Teschner reviewed Ashley's prior medical records from before January 23, 2013 or purported to offer an opinion about Ashley's medical

19

condition or limitations on or before January 23, 2013.  Dr. Teschner also did not include any clinical findings from a physical examination of Ashley's hip, leg, back or neck.

Instead, Dr. Teschner was primarily concerned with Ashley's recent anemia issues, stating that she spent half of the 60-minute visit talking with Ashley about "her hematologic condition and possible [diagnoses] and possible [treatment] and which way to go to finally get answers."  Dr. Teschner performed hematocrit and hemoglobin tests, the results of which were low.  Dr. Teschner noted that she needed records from Dr. Sengar, Ashley's hematologist, tried unsuccessfully to call Dr. Sengar, and referred Ashley to UAB Hematology at the Kirklin Clinic as soon as possible.

Less than a month later, on September 6, 2013, Dr. Teschner saw Ashley for cold symptoms, including a sore throat.  Dr. Teschner performed strep and mononucleosis tests, which were negative, diagnosed bronchitis and pharyngitis, and prescribed antibiotics and other medications.  Dr. Teschner indicated that she had received and reviewed Ashley's records from Dr. Sengar, the Riverview Regional Medical Center, and the Gadsden Regional Medical Center as to Ashley's treatment for hematological disorders in April and August 2013, but did not mention any other medical records or Ashley's orthopedic impairments.  When

Ashley reported that she was out of pain medications, Dr. Teschner, concerned about "drug seeking behavior," declined to write Ashley a prescription.

In short, nothing in Dr. Teschner's treatment notes sheds light on Ashley's left hip and leg impairments on or before January 23, 2013. Instead, they show Ashley continued to have leg and hip pain requiring management with medication after the ALJ's decision, which is at most merely cumulative evidence. However, Dr. Teschner's treatment notes appear to relate primarily to Ashley's worsening hematologic disorders, which, as we explained above, are not chronologically relevant.

2.    Dr. Warren

We also address Dr. Warren's independent medical evaluation and his physical capacities form completed on October 4, 2013, a year and nine months after the ALJ's decision. Dr. Warren prepared both his written evaluation and the physical capacities form at the time of his physical examination of Ashley.

Dr. Warren's written evaluation included a summary of some of Ashley's medical conditions, including her left hip pain, chronic anemia, and anxiety, a brief summary of her past medical and surgical history, including her multiple hip surgeries in 2010 and 2011, and a list of her current medications. The evaluation also contained clinical notes from Dr. Warren's physical examination of Ashley, which included, inter alia, notations that she had a noticeable limp with ambulation

21

and reduced strength and reflexes in her left lower extremity.  The evaluation included Dr. Warren's impressions that Ashley's primary issue was her left hip pain, which persisted despite pain medication management; that it was "unlikely that her limitations [as a result of her car accident] will ever resolve or that her pain will ever be completely controlled."  Dr. Warren also noted Ashley's anemia was likely related to her gastric bypass surgery and seemed to be a recurrent issue "despite management by her primary hematologist."  He also noted that her general anxiety "appears to be more post-traumatic in nature" and suggested a "full psychiatric evaluation."

In his physical capacities form, Dr. Warren opined that Ashley: (1) could sit for one hour, stand for thirty minutes to one hour, and walk for less than thirty minutes at one time; (2) would be expected to lie down, sleep, or sit with her legs propped for one or two hours in an eight-hour day; (3) could perform a task for one hour before needing a rest or break; and (4) could maintain attention and concentration for four hours.  Importantly, Dr. Warren opined that these limitations existed back to September 29, 2010, Ashley's disability onset date.

While Ashley contends that Dr. Warren's materials are chronologically relevant under Washington, not all of the "specific circumstances" identified in Washington are present here.  See 806 F.3d at 1323.  It is apparent from Dr. Warren's written evaluation that he was aware of at least some of Ashley's medical

history during the relevant period, but there is no indication that he was provided with Ashley's medical records for that period. Furthermore, Dr. Warren's physical examination was conducted almost two years after the ALJ's decision, far beyond the 7-month time span in Washington. Id. at 1319. And, by the time of Dr. Warren's examination, Ashley's anemia had worsened to the point that, as Dr. Warren noted in his written evaluation, she was being treated by Dr. Sengar, and had received a blood transfusion within the last month. Thus, it is not clear to what extent Ashley's worsening hematologic disorders contributed to Dr. Warren's opinion about Ashley's limitations.

Even assuming arguendo that Dr. Warren's opinions are chronologically relevant, they are not "material." That is, even if Dr. Warren's opinions are accepted, there is no "reasonable possibility that they would change the administrative result." Id. at 1321 (quotation marks omitted). This is because Dr. Warren's opinions are largely consistent with the other medical source opinion in the record about Ashley's physical limitations and with the ALJ's RFC finding.

Specifically, on August 18, 2012, Dr. Sathyan Iyer performed a consultative musculoskeletal examination of Ashley, after which Dr. Iyer opined that Ashley could, among other things, sit for one hour at one time and stand or walk for thirty minutes at one time without interruption, and could sit for a total of six hours and stand or walk for a total of one hour in an eight-hour workday. At the

23

administrative hearing, the VE Mann testified that a person with those sitting, standing, and walking limitations (and other limitations as well) could perform the sedentary, unskilled job of surveillance system monitor.  The ALJ incorporated Dr. Iyer's sitting, standing, and walking limitations into his RFC finding, and found, based on the VE's testimony, that Ashley was not disabled.

In sum, the district court did not err in denying Ashley's motion to remand Ashley's case to the Appeals Council for additional consideration.  For the same reasons, the district court did not err in denying her subsequent Rule 59(e) motion seeking reconsideration of her motion to remand.

## III.  CONCLUSION

In sum, we affirm the district court's order denying Ashley's first motion to remand and affirming the Commissioner's denial of Ashley's applications for disability insurance benefits and supplemental security income for a period of disability between September 29, 2010 and January 23, 2013.  We also affirm the district court's denial of Ashley's Rule 59(e) motion to alter or amend the judgment.

**AFFIRMED.**