[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12191
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cv-00283-AKK

JAMES ARNOLD,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 13, 2018)

Before MARTIN, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

James Lloyd Arnold appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Arnold's application for disability insurance benefits.  On appeal, Arnold argues that: (1) the Administrative Law Judge ("ALJ") improperly evaluated the opinion of a consultative examining physician, Dr. Hisham Hakim; (2) substantial evidence does not support the ALJ's determination that Arnold could perform his past relevant work as a radio dispatcher; (3) the district court should have granted his motion for a "sentence four" remand to the agency in light of new Social Security Ruling ("SSR") 16-3p, which should be applied retroactively; and (4) the district court should have granted his motion for a "sentence six" remand based on new evidence of bias on the part of the ALJ and of a subsequent favorable decision from the agency.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Arnold's Medical History

After a trip to the emergency room on May 3, 2010 for low back pain, Arnold was referred to Dr. James White, who ultimately diagnosed degenerative disc disease in Arnold's lumbar spine primarily at disc L5, but also at L4.  On July 20, 2010, Dr. White performed a total laminectomy and bilateral facetectomy with transforaminal lumbar interbody fusion at L4 and L5.  Arnold did not return to his work as a forklift operator after his surgery.

Over the course of several follow up visits in late 2010 and early 2011, x-rays and diagnostic imaging indicated that Arnold's lumbar spine was in good condition after the surgery, but Arnold continued to complain of low back pain. Dr. White prescribed physical therapy, which helped, but Arnold often did not go because he could not afford it. In April 2011, although Arnold continued to have "vague subjective complaints of back pain," Dr. White found that Arnold was neurologically unchanged and concluded that Arnold should be able to return to work. In a return visit on July 29, 2011, Dr. White determined, based on a functional capacity evaluation conducted by Arnold's physical therapist, that Arnold could return to work "with restrictions," but noted that Arnold's previous work (as a forklift operator) might not allow those restrictions.

In February 2012, Arnold began seeing primary care physician Dr. Stacy Towles-Moore for treatment of his back pain. Dr. Towles-Moore diagnosed Arnold with chronic lumbago and chronic pain syndrome. Dr. Towles-Moore prescribed muscle relaxants and pain medications, which Arnold sometimes refused to take, as well as back stretches, heating pads, and steroid dose packs. When in July 2012 Arnold's back pain became "severe and unremitting," Dr. Towles-Moore administered steroid and anti-inflammatory injections. Dr. Towles-Moore also referred Arnold to UAB.

In October 2012, Arnold was seen by Dr. Donald Deinlein at UAB for evaluation of his low back pain. Arnold advised Dr. Deinlein that he controlled his pain with intermittent and sparing use of pain medication and muscle relaxants. Dr. Deinlein ordered a CT scan to evaluate the surgical fusion of Arnold's discs, but explained to Arnold that if he was "well fused, further operations may be of limited utility."

A week later, Dr. Deinlein reviewed the CT scan and determined that the hardware in Arnold's spine was in place with no evidence of loosening or failure. Dr. Deinlein opined that Arnold's low back pain might be related either to scar tissue or arachnoiditis, a pain disorder caused by inflammation of one of the membranes that surround and protect the nerves of the spinal cord. See "Arachnoiditis," http://my.clevelandclinic.org/health/diseases/12062-arachnoiditis (last visited January 24, 2017). Dr. Deinlein informed Arnold that his fusion appeared to be solid and that there were no surgical options that would reliably improve his pain. Dr. Deinlein recommended that Arnold see a pain management physician and consider an implantable nerve stimulator.

In February 2013, Arnold began seeing Dr. Shailesh Upadhyay for pain management. Arnold reported that his present pain severity was at an eight and that the pain was the most severe in the morning and in the evening. Dr. Upadhyay's examination found muscle atrophy and tenderness in Arnold's upper

4

and lower extremities, and muscle spasm and weakness in lumbar spine with painful range of motion, but also found that Arnold's reflexes and gait and station were normal.  Dr. Upadhyay prescribed muscle relaxers and pain medication and noted that "[n]othing else will help his pain."  In a May 2013 follow-up, Arnold reported that the medications were controlling his pain, which was at a level three.  Dr. Upadhyay again prescribed medication and muscle relaxers and requested follow-up.  In his next visit on July 8, 2013, Arnold's pain remained at level 3, and he was kept on the same pain management plan.

Meanwhile, in a June 27, 2013 follow-up visit, Dr. Towles-Moore additionally diagnosed Arnold with idiopathic peripheral neuropathy, i.e., nerve damage, due to pain in his legs and feet and referred Arnold to a neurologist.  On July 12, 2013 Arnold was seen by neurologist Dr. Richard Chin for pain, numbness, and burning sensations in Arnold's legs and feet that had gradually gotten worse since his back surgery.  Dr. Chin assessed that Arnold had neuropathy and prescribed Neurontin in place of Lyrica, as Arnold said he had recently been prescribed Lyrica but did not tolerate it well.  In a September 2013 follow-up, Arnold complained that the pain and numbness had gotten worse and that he was unable to function.  Dr. Chin noted that Arnold was not taking the full dose of Neurontin, although Arnold appeared to be able to tolerate that medication.  Dr. Chin encouraged Arnold to take the full dose, also prescribed a steroid dose pack

5

and a muscle relaxant, and ordered an MRI.  The MRI, conducted on September 9, 2013, revealed a normal alignment of the lumbar spine with no significant spinal stenosis and no abnormal signal in the spinal cord or vertebral bodies.  It did reveal a small disc protrusion at L3-L4, but no nerve root compression.  In a final follow-up on October 16, 2013, Dr. Chin noted Neurontin alleviated some of Arnold's pain but made him drowsy and that Arnold was walking with a quad cane.

## B.    Arnold's Three Applications for Benefits

Since his July 2010 back surgery Arnold has applied three times for disability benefits.  Arnold's first and second applications were denied, but his third application was granted.  This appeal is from the denial of Arnold's second application.  Because Arnold raises the issue of ALJ bias based on the outcomes of his first and third applications, we briefly discuss them as well.

On October 21, 2010, Arnold filed his first application for disability benefits, alleging a disability onset date of May 3, 2010, which is the date Arnold went to the emergency room with back pain.  After a hearing, the ALJ, Mary Helmer, issued a decision on March 15, 2012, concluding that Arnold was not under a disability between May 3, 2010 and March 15, 2012.  In particular, the ALJ concluded that as of April 18, 2011—the date Dr. White indicated that Arnold was able to return to work—Arnold was able to perform his past relevant work as a

6

radio dispatcher.  Arnold did not seek Appeals Council review of this first decision.

Rather, two months later, on May 10, 2012, Arnold filed his second application for benefits, alleging the same disability onset date of May 3, 2010.  On November 18, 2013, Arnold had a hearing before an ALJ, again Mary Helmer.  On May 29, 2014, the ALJ issued a decision determining that Arnold was not disabled between May 3, 2010 and May 29, 2014.  As with the first application, the ALJ concluded that Arnold was not disabled because he still was able to perform his past relevant work as a radio dispatcher.  The ALJ clarified that Arnold had "not submitted new and material evidence that justifies reopening and revising the prior application" and that "[t]he principle of res judicata applies . . . through March 15, 2012."  On December 21, 2015, the Appeals Council denied Arnold's request for review.

At some point, Arnold filed a third application for disability benefits, which was granted on May 21, 2016.  The Social Security Administration determined that Arnold became disabled on May 30, 2014, and awarded him benefits.

## C.    ALJ's Decision Denying Arnold's Second Application

As to the second ALJ decision on appeal before this Court, both Arnold and a vocational expert testified at the ALJ hearing.  When Arnold testified that he had developed neuropathy in his legs and feet, the ALJ ordered a post-hearing

neurological consultative examination with an electromyogram ("EMG") nerve conduction study.  Dr. Hisham Hakim performed the examination and EMG in February 2014.

The ALJ's subsequent decision determined that Arnold was not disabled using the five-step evaluation process.  Specifically, the ALJ concluded: (1) that Arnold had not engaged in gainful work since May 3, 2010; (2) that Arnold had the severe impairments of status post lumbar fusion at L4-S1, mild lumbar disc protrusion, neuropathy, and obesity; (3) Arnold's impairments did not meet or medically equal the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; and (4) Arnold had the residual functional capacity ("RFC") to perform light work, except that he must alternate the positions of sitting and standing at will, cannot operate foot controls, climb stairs, ladders, ropes or scaffolds, kneel, crouch, or crawl, must avoid exposure to excessive vibration, and must avoid exposure around hazardous machinery and unprotected heights, which meant that Arnold could perform his past position as a radio dispatcher as actually and generally performed.

In determining Arnold's RFC for purposes of step four, the ALJ acknowledged that she was required to apply a two-step evaluation and that as part of that process, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

8

objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." The ALJ extensively reviewed Arnold's medical history, his hearing testimony and functional reports, and the results of several consultative examinations requested by the agency.

In reviewing the medical evidence, the ALJ also summarized and appeared to accept the results of Dr. Hakim's post-hearing consultative examination, including that Arnold: (1) had a slight antalgic gait, but normal muscle tone and 5/5 strength; (2) walked briskly with a cane and did not need the cane to ambulate; (3) had decreased sensation of his right foot and adequate lower extremity, hip, and knee flexion with associated pain on the right; (4) could toe and heel walk, bend and almost touch his toe, hop on his right leg with some difficulty and on his left leg with no difficulty; (5) had muscle tightness and spasm in his lumbar spine; (6) had negative straight leg test on the left and borderline positive straight leg test on the right; and (7) and an EMG of Arnold's right lower extremity showed post-surgical changes mostly at the L5 and S1 nerve root distribution with no acute changes. However, the ALJ gave only "[s]ome weight" to Dr. Hakim's assessment that Arnold could perform a reduced range of medium work, and concluded that the record did not support Dr. Hakim's limitations that Arnold should only frequently use his hands, no more than occasionally work around pulmonary

9

irritants and chemicals, and work only around moderate noise.  The ALJ explained that Arnold had never claimed, and the record did not establish, any respiratory complaints, hearing limitations, or limitations on the use of his hands.

The ALJ found that Arnold's hearing testimony that he had significantly reduced activities and needed help dressing himself was not "fully credible" because: (1) Arnold had also testified that there had been no worsening of his symptoms since early 2011; and (2) a September 2012 consultative examination had indicated that Arnold bathed, dressed, and groomed himself, performed household chores, drove a vehicle, shopped, and attended church, among other activities.

The ALJ stressed that Arnold did have a severe back impairment and had undergone surgery, but noted that there had been no additional surgery recommended or evidence of hardware failure or loosening since his surgery.  The ALJ pointed out that there was no evidence of muscle atrophy and that findings as to the level of motor strength and his gait were inconsistent.  Moreover, the ALJ noted that Arnold's treatment records showed improvement when he took medication, but that he had not taken medication on a consistent basis, nor was he on medication at the time of the hearing.

The ALJ reviewed Arnold's reported activities of daily living, which included driving, helping prepare meals, performing light household chores such as

10

washing dishes, paying bills, and shopping for groceries, caring for his children and pets, going outside two or three times a day, and regularly attending church.

The ALJ then found that "the objective medical evidence and the activities of daily living indicat[e] that the claimant's impairments are not as disabling as alleged" and that the ALJ's RFC finding was "supported by the fact that the signs, symptoms, and laboratory findings are insufficient and inconsistent with the claimant's allegations."

Once the ALJ determined Arnold's RFC, the ALJ, at step four, compared that RFC to the physical and mental demands of the past position of radio dispatcher and found that Arnold could perform the radio dispatcher position as actually and generally performed. The ALJ noted that the VE's hearing testimony—that a person with Arnold's age, education, past work experience and RFC would be able to perform the sedentary and semi-skilled work of a radio dispatcher—was consistent with the Dictionary of Occupational Titles except for the sit/stand option, which was based on the VE's education, training, and experience. Based on the VE's testimony, the ALJ determined that Arnold was capable of performing his past relevant work as a radio dispatcher and thus had not been under a disability since May 3, 2010.

11

**D.    Appeals Council Denial of Review**

On June 11, 2014, Arnold sought Appeals Council review of the IJ's decision to deny the second application on the basis that it was not supported by substantial evidence.  Arnold did not submit any new evidence with this request for review.

The Appeals Council denied Arnold's request for review, stating that it had considered Arnold's reasons for disagreeing with the ALJ, but had found that those reasons did not provide a basis for changing the ALJ's determination.

**E.    District Court Proceedings**

Arnold filed a complaint for judicial review of the Commissioner's denial of his second application for benefits.

Several months later, Arnold filed a motion for a "sentence six" remand in which he argued that ALJ Helmer was not impartial and denied him a full and fair hearing.  In support of his motion to remand, Arnold attached: (1) a copy of a Notice of Award from the Social Security Administration dated May 21, 2016, stating that Arnold had been found disabled as of May 30, 2014, and had been awarded disability benefits based on his third application filed on February 3, 2016; and (2) Arnold's own affidavit in which he averred, inter alia, that before the hearing on his first application for disability benefits, the ALJ, Mary Helmer, offered to give Arnold one year of disability benefits in exchange for his agreement

12

not to file another claim, and that after Arnold refused the offer and the hearing was held, the ALJ denied his claim in full. Arnold argued that this evidence undermined ALJ Helmer's decision to deny his second application and showed that she was predisposed to deny his second application to punish him.

Several weeks later, Arnold filed another motion to remand, this time seeking a "sentence four" remand based on new SSR 16-3p. Arnold argued that although SSR16-3p did not become effective until after the ALJ's decision, it should apply retroactively to his case.

In a single order, the district court denied both of Arnold's motions to remand and affirmed the Commissioner's decision. As to request for the "sentence six" remand, the district court concluded that even assuming Arnold's allegations in his affidavit were true, Arnold had not shown that a remand would change the administrative result and that the ALJ's decision was supported by substantial evidence. As to the request for a "sentence four" remand, the district court determined that Arnold had not shown that SSR 16-3p applied retroactively, and, even if it did, the ALJ's evaluation of Arnold's subjective symptoms did not violate it.

13

## II. DISCUSSION

### A.    ALJ's Evaluation of Dr. Hakim's Opinion

When weighing medical evidence, the ALJ considers many factors including whether a medical source opinion is well-supported and consistent with the record. 20 C.F.R. § 404.1527(c).  The ALJ will also consider factors such as whether the physician examined or treated the claimant, and the length, frequency, and nature of the treatment relationship.  Id.[1]

In assessing a claimant's RFC, the ALJ must state with particularity the weight given to different medical source opinions and the reasons for doing so. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  The ALJ must give a treating physician's opinion substantial or considerable weight unless there is good cause to disregard the opinion.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Id. (quotation marks omitted).

---

[1]Because Arnold's second application for disability benefits was filed before March 27, 2017, the standards for evaluating medical opinion evidence found in 20 C.F.R. § 404.1527 apply to his case.  See 82 Fed. Reg. 5844, 5869 (Jan. 18, 2017) (stating that for applications for disability benefits filed after March 27, 2017, the standards governing the evaluation of medical opinions are found in 20 C.F.R. § 1520c).

A preference exists for the opinions of treating physicians over consultative examinations or brief hospitalizations. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (determining that a one-time examiner's opinion was not entitled to great weight). Furthermore, the ALJ need not defer to the opinion of a physician who conducted a single examination because that physician is not a treating physician. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). An ALJ may reject any medical opinion if the evidence supports a contrary finding. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).[2]

Here, substantial evidence supported the ALJ's decision to give only some weight to the opinion of Dr. Hakim that Arnold could perform a reduced range of medium work. First, because Dr. Hakim was a consultative physician, the ALJ was not required to afford his opinion the same treatment as that of a treating physician. See Lewis, 125 F.3d at 1440. Contrary to Arnold's argument on appeal, this Court has addressed the weight to be accorded to the opinion of a one-

---

[2]This Court reviews the ALJ's decision "only to determine whether it is supported by substantial evidence," and the ALJ's application of legal principles de novo. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.

time consultative examiner vis-à-vis the opinions of the claimant's treating physicians.  See Crawford, 363 F.3d at 1160.[3]

Nevertheless, the ALJ clearly articulated the reasons why she found Dr. Hakim's assessment of some of Arnold's functional limitations to be contradicted by the evidence on the record, and substantial evidence supported the ALJ's explanation.  While Dr. Hakim recommended that Arnold could only "frequently" use his hands, could only "occasionally" work around pulmonary irritants and chemicals, and could only work around moderate noise, none of the medical records showed evidence of functional limitations in Arnold's hands, lungs, or hearing ability over the course of his treatment for his low back pain.  Nothing in Dr. Hakim's evaluation report or EMG report indicated that Arnold had any such limitations.

Further, Arnold himself did not complain of such limitations at any time in the claim process or during treatment.[4]  At the hearing before the ALJ, Arnold did

---

[3]Arnold's argument that we should apply the standard in Wilder v. Chater, 64 F.3d 335, 337-38 (7th Cir. 1995), is not well taken.  We have no occasion to consider, much less apply, the standard adopted by the Seventh Circuit in Wilder.  In Wilder, the Seventh Circuit concluded that an agency-appointed consultative psychiatrist's opinion was entitled to considerable, but not conclusive, weight when it was the only medical evidence addressing the critical issue of the onset date of the claimant's depression.  Wilder, 64 F.3d at 337.  The record in this case, unlike the record in Wilder, contains multiple medical opinions and supporting medical records as to the issue of Arnold's functional limitations resulting from his impairments, all of which the ALJ considered in determining Arnold's RFC.

[4]In his function report, Arnold checked the box "Using Hands," among many other boxes, to indicate that the use of his hands was affected by his conditions.  Although the form required him to "explain how your illnesses, injuries, or conditions affect each of the items you

16

not mention that he had problems using his hands, breathing, or hearing.  In fact, Arnold indicated that he had no other conditions that interfered with his ability to work apart from his back and legs.  Thus, the ALJ had good cause to discount Dr. Hakim's opinion as to these limitations.  See Winschel, 631 F.3d at 1179.

To the extent Arnold complains about the ALJ's decision to give only "some weight" to Dr. Hakim's assessment that Arnold could perform a "reduced range of medium work," any error in this regard would be harmless.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ's error harmless where it did not change the administrative outcome).  Medium work is defined as work involving lifting no more than 50 pounds at a time and frequently lifting and carrying up to 25 pounds.  See 20 C.F.R. § 404.1567(c).  Dr. Hakim opined that Arnold could occasionally lift up to 50 pounds and frequently lift up to 20 pounds, which approximates medium work.

However, the ALJ ultimately found, based on all the record evidence, that Arnold had the RFC to perform only light work, which is defined as lifting no more than 20 pounds at a time and frequently lifting and carrying up to 10 pounds, but included a sit/stand option and some other non-lifting/carrying restrictions. See 20 C.F.R. § 404.1567(b).  Moreover, the ALJ concluded that Arnold was not disabled because he could perform his past job as a radio dispatcher, a sedentary

checked," and Arnold did so for other physical functions, such as lifting, kneeling or standing, he did not explain how his hands were affected.

17

job, which is defined as lifting no more than 10 pounds and occasionally lifting and carrying only articles, such as files and small tools.  Notably, even Arnold agreed that he could lift up to 10 pounds.  Thus, regardless of the amount of weight the ALJ accorded Dr. Hakim's lifting restrictions, the ALJ would have concluded that Arnold was not disabled because he could still work as a radio dispatcher.

## B.    ALJ's Fourth Step Finding

At step four, a claimant will be found not disabled if he can return to his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  To determine whether a claimant can perform his past relevant work, the ALJ must consider all of the duties of that work and evaluate the claimant's ability to perform them in spite of the impairment.  Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).  The claimant bears the burden of showing his inability to perform past work.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

When the claimant cannot perform a full range of work or he has non-exertional impairments that significantly limit basic work skills, the primary method for determining whether the claimant can perform other jobs is through the testimony of a VE.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).  In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises of the claimant's impairments.  Id.

Here, substantial evidence supports the ALJ's conclusion that Arnold could perform his past work as a radio dispatcher. First, the ALJ posed the appropriate hypothetical question to the VE, asking whether someone with Arnold's limitations, including having a sit-stand at-will option, could do any of Arnold's past work. The VE confirmed that Arnold's past position of radio dispatcher would still be available. The ALJ further limited the hypothetical question by removing the sit-stand at-will option, and the VE again confirmed that the radio dispatcher position would still be available.

In determining Arnold's RFC, the ALJ thoroughly examined the medical record evidence and articulated Arnold's functional limitations under his current condition. The ALJ then compared "the claimant's [RFC] with the physical and mental demands" of the radio dispatcher work and found that Arnold could perform it "actually and generally." Thus, the ALJ properly considered whether Arnold could perform past relevant work by appropriately relying on the VE's testimony. See Jones, 190 F.3d at 1229. Further, the VE's testimony that Arnold could perform the sedentary and semi-skilled work of a radio dispatcher with an option to sit or stand at will was consistent with Arnold's medical records, including (1) treating physician Dr. White's conclusion that Arnold could go back to work with limitations, (2) consultative examining orthopedic surgeon Dr. Morton Rickless's determination that Arnold could "do a little more than he thinks

19

he can," as well as (3) Dr. Hakim's determination that Arnold could sit for two hours and stand and walk for one hour at a time and that Arnold could sit for four hours and stand and walk for two hours in an eight-hour work day.

In sum, substantial evidence supported the ALJ's finding that Arnold could perform his past relevant work as a radio dispatcher and thus was not disabled from May 3, 2010 to May 29, 2014.

## C.     Motions to Remand in the District Court

There are two methods of remand under 42 U.S.C. § 405(g)—"sentence four remands" and "sentence six remands." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). Pursuant to the fourth sentence, the district court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). To remand under sentence four, the district court must find either that the decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996).

In contrast, a sentence six remand is appropriate only when the claimant submits evidence for the first time to the district court that might have changed the outcome of the administrative proceedings. Ingram, 496 F.3d at 1267-68. To obtain a remand under the sixth sentence, the claimant must show that the evidence

is new and material and that he had good cause for failing to submit the evidence at the agency level.  Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986).

The good cause requirement is satisfied when the evidence did not exist at the time of the administrative proceedings.  Id. at 878; see also Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988).  If, however, the claimant could have obtained the evidence sooner, good cause is not shown.  Caulder, 791 F.2d at 878-79; see also Falge v. Apfel, 150 F.3d 1320, 1323 n.8 (11th Cir. 1998) (noting that although the physician's report was prepared after the ALJ's hearing, the opinions set out in the report appeared to have been based on medical examinations and tests conducted before the ALJ's decision).[5]

### 1.    Arnold's Motion for a Sentence Four Remand

The district court did not err in denying Arnold's request for a sentence four remand based on new SSR 16-3p.  A month after Arnold filed his complaint in the district court, the Social Security Administration issued SSR 16-3p, which rescinded SSR 96-7p, the agency's guidance on evaluating a claimant's subjective symptoms such as pain.  See SSR 16-3p, 81 Fed. Reg. 14166, 14167 (March 16, 2016); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  New SSR 16-3p removed the term "credibility" from the policy, stressing that an adjudicator evaluating a claimant's symptoms will "not assess an individual's overall character or

---

[5]We review de novo a district court's denial of a motion to remand under sentence four or sentence six.  Jackson, 99 F.3d at 1092.

21

truthfulness" but rather will focus on the two-step evaluation, specifically "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." Id. at 14170-71.

SSR 16-3p explicitly stated that it became effective on March 28, 2016. See SSR 16-3p, 81 Fed. Reg. 14166 (March 16, 2016); 81 Fed. Reg. 15776-01 (March 24, 2016). Moreover, on October 25, 2017, the Social Security Administration republished SSR 16-3p with the revision that it was "applicable on MARCH 28, 2016," and explained that its "adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016," and that it expected that federal courts reviewing those determinations and decisions would do so "using the rules that were in effect at the time we issued the decision under review." 82 Fed. Reg. 49462-03, 49468 & n.27 (Oct. 25, 2017).

Although Arnold argues that SSR 16-3p should apply retroactively to the ALJ's decision dated May 29, 2014, this Court recently concluded that SSR 16-3p "applies only prospectively and does not provide a basis for remand." See Hargress v. Soc. Sec. Admin., Comm'r, 874 F.3d 1284, 1290 (11th Cir. 2017) (stressing that SSR 16-3p does not contain language requiring retroactive

22

application, and, in fact, contains language indicating that it should apply prospectively).  Accordingly, Arnold's argument is foreclosed by our precedent, and the district court properly denied his motion for a sentence four remand.[6]

2.    Arnold's Motion for a Sentence Six Remand

The district court also did not err in denying Arnold's motion to remand under sentence six based on his evidence of alleged ALJ bias.

An ALJ is prohibited from conducting a hearing if he or she is prejudiced or partial with respect to any party, and when the claimant objects to the assignment of a particular ALJ, he must notify the agency at the earliest opportunity.  20 C.F.R. § 404.940.  Although due process requires an ALJ's impartiality, there is a presumption that ALJs, as quasi-judicial officers, are unbiased in their decisions. See Schweiker v. McClure, 456 U.S. 188, 195, 102 S. Ct. 1665, 1670 (1982).  This presumption can be rebutted by a showing of a conflict of interest or some other specific reason for disqualification, and the burden to overcome such presumption lies with the party asserting bias.  Id., 102 S. Ct. at 1670.

Arnold's first piece of new evidence is the Notice of Award dated May 21, 2016, after he filed his complaint in the district court.  The Notice of Award was

_____

[6]Even if SSR 16-3p applied retroactively, the ALJ's evaluation of Arnold's subjective symptoms did not violate it.  As in Hargress, the ALJ here used the word "credible" but did not assess Arnold's overall character or truthfulness.  See Hargress, 874 F.3d at 1290 n.3.  Instead, the ALJ conducted the two-step evaluation, and considered, in accordance with both SSR 96-7p and SSR 16-3p, whether Arnold's subjective complaints were supported by the medical evidence and consistent with the other evidence in the record.

based on Arnold's third application for disability benefits and advised Arnold that he had been determined to be disabled as of May 30, 2104.

Not only does this Notice of Award apply to a different time period than Arnold's first two disability claims, but this Court has determined that the mere fact that a claimant was subsequently awarded benefits is not itself, "'as opposed to the evidence supporting the subsequent decision,'" new and material evidence warranting a remand of a prior denial of benefits. See Hunter v. Soc. Sec. Admin. Comm'r, 808 F.3d 818, 821-22 (11th Cir. 2015) (quoting in part and adopting the position in Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009)). Nor does the existence of a later favorable decision from the Social Security Administration undermine the validity of a previous denial of benefits. Id.

Arnold attempts to distinguish Hunter by arguing that he is not relying solely on the subsequent favorable decision, but also on his second piece of evidence, his affidavit, which he contends shows a due process violation. We note, however, that Hunter unequivocally held "that a later favorable decision is not evidence for § 405(g) purposes . . . ." Id. at 822.

In any event, Arnold also cannot rely on his affidavit for purposes of a sentence six remand. Arnold's affidavit is dated August 22, 2016, but it describes events during administrative proceedings in 2012 related to his first application for disability benefits. In other words, Arnold knew of these events and could have

24

prepared his affidavit about them any time after the ALJ's denial of his first disability application in 2012. Yet, Arnold has not stated good cause, or indeed any reason at all, to explain his failure to present this evidence to the agency, which could have assigned Arnold's case to another ALJ.[7] See Falge, 150 F.3d at 1323 n.8; Caulder, 791 F.2d at 879.

Given that Arnold's subsequent favorable decision on this third application cannot undermine the ALJ's denial of benefits on Arnold's second application and given that Arnold failed to establish good cause for failing to present his affidavit about the proceedings on his first application to the agency, a sentence six remand was not warranted.

However, even if we were to consider the allegations in Arnold's affidavit, we would conclude that Arnold had not carried his burden to overcome the presumption that the ALJ was unbiased. Arnold offers no support beyond his own speculation that ALJ Helmer denied his second disability application in retaliation for his refusal to accept her offer on his first disability application. For example, Arnold does not point to any comments by the ALJ during the administrative

---

[7]Because Arnold failed to raise the issue of ALJ bias with the agency, he arguably also failed to exhaust his administrative remedies. The Commissioner, however, has never raised the exhaustion issue either in this Court or in the district court. Instead, the Commissioner responded to Arnold's motion for a sentence six remand on the merits. Accordingly, the Commissioner has waived administrative exhaustion, and we are not barred from considering Arnold's bias claim. See Crayton v. Callahan, 120 F.3d 1217, 1220-22 (11th Cir. 1997) ("The agency may always waive the exhaustion requirement. It may be held to have done so by failing to challenge the sufficiency of the allegations in plaintiffs' complaint . . . .").

25

proceedings on Arnold's second application that would suggest that the ALJ even recalled her previous offer, even assuming it was made, much less that she wanted to punish Arnold for rejecting it. And, the ALJ's decision denying his second application contains a thorough and careful review of the evidence.

For all these reasons, the district court did not err in denying Arnold's motion for a sentence six remand for a new hearing before a different ALJ.

## III.  CONCLUSION

The ALJ's decision denying Arnold's second application for disability benefits is supported by substantial evidence. We also find no error in the district court's order denying Arnold's two motions to remand his case to the Commissioner.

**AFFIRMED.**